757 A.2d 333

Walter H. and Leonore ANNENBERG, Petitioners,

v.

COMMONWEALTH of Pennsylvania and Michael D. Fisher, Attorney General of the Commonwealth of Pennsylvania and Board of Commissioners of the County of Montgomery, being Richard Buckman, Joseph Hoeffel and Mario Mele (solely in their official capacities), and Board of Assessment Appeals of the County of Montgomery, and County of Montgomery, Respondents.

Supreme Court of Pennsylvania.

Submitted May 15, 1997.

Decided April 7, 1998.

William J. Henrich, Jr., Peter J. Picotte, II, Maura E. Fay, Philadelphia, for Walter H. & Lenore Annenberg.

Steven H. Lupin, Mark F. Himsworth, Steven A. Hann, Lansdale, for Bd. of Com'rs of Montgomery County.

Richard A. Sprague, Denise Pallante, Philadelphia, for intervenors.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION

CAPPY, Justice.

We exercised plenary jurisdiction[1] over these matters to determine whether § 4821 of the Act of June 17, 1913, P.L. 507, *as amended,* 72 P.S. §§ 4821–4902, is unconstitutional as it violates the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3. For the following reasons, we determine that 72 P.S. § 4821 facially discriminates against

---

1. 42 Pa.C.S. § 726.

interstate commerce. Furthermore, we direct that the Court of Common Pleas of Montgomery County conduct a hearing on issues related to whether § 4821 is a "compensatory tax".

Walter H. Annenberg, as the Sole Trustee for the Trust under the Will of Moses L. Annenberg, and Walter H. and Leonore Annenberg (collectively, the "Annenbergs") filed petitions for review in the nature of a complaint for declaratory and injunctive relief in the Commonwealth Court's original jurisdiction [2] against the Commonwealth of Pennsylvania and Thomas W. Corbett, Jr., Attorney General (collectively, the "Commonwealth") and also against the Board of Commissioners of the County of Montgomery and each Commissioner in his official capacity, the Board of Assessment Appeals of the County and the County itself (collectively, the "County"). The Annenbergs sought a declaration that § 4821 violates the Commerce Clause of the United States Constitution and is therefore null and void insofar as it imposes a tax on any corporate stock held by them.[3] They also requested a permanent injunction against the Commissioners and the Board of Assessment Appeals prohibiting them from imposing and collecting the tax on any shares of corporate stock that the Annenbergs own.

The Commonwealth and the County filed preliminary objections. They asserted that the Commonwealth was not an "indispensable party" and therefore there was no basis for the Commonwealth Court to exercise its original jurisdiction under 42 Pa.C.S. § 761. The Commonwealth Court agreed. By order dated December 23, 1996, it sustained the preliminary objections and ordered that this matter be transferred to the Court of Common Pleas of Montgomery County sitting in equity.

**2.** 42 Pa.C.S. § 761.

**3.** The 1996 fair market value of stock held by the Trust under the Will of Moses L. Annenberg in foreign corporations not doing business in Pennsylvania was $725,994,938.00. R.R. at 39a. The 1996 fair market value of the stock held by Walter and Leonore Annenberg in foreign corporations not doing business in Pennsylvania was $120,535,800.00. R.R. at 23a.

On January 3, 1997, the Annenbergs petitioned this court to exercise its plenary jurisdiction over these actions. On January 31, 1997, we granted the Annenbergs' petition limited to the issue of whether § 4821 is constitutional.

■ Our standard of review in examining whether a taxation provision is unconstitutional is whether the statute clearly, palpably and plainly violates the Constitution. *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985). As with any question of law, our scope of review is plenary. *Phillips v. A-Best Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

The Commerce Clause enables the Congress "[t]o regulate Commerce ... among the several States...." U.S. Const., art. I, § 8, cl. 3. The Framers included such a provision in the Constitution because they were convinced "that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation." *Hughes v. Oklahoma*, 441 U.S. 322, 325, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250, 255 (1979). Thus, although it is phrased as a grant of regulatory power to the Congress, the Commerce Clause has long been understood to have a "negative" aspect which denies states the power to discriminate unjustifiably against or burden the interstate flow of articles of commerce. *See Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995).

■ In examining whether a state law violates the negative Commerce Clause, we first must determine whether the provision at issue is facially discriminatory. The term " 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13, 21 (1994). State laws discriminating against interstate commerce on their face are "virtually *per se* invalid." *Id.*

Where a taxation statute has been determined to discriminate against interstate commerce, a state may overcome the presumption of invalidity by showing that the statute is a " 'compensatory tax' designed simply to make interstate commerce bear a burden already borne by intrastate commerce," *Fulton Corp. v. Faulkner*, 516 U.S. 325, 331, 116 S.Ct. 848, 854, 133 L.Ed.2d 796, 805 (1996) (citations omitted). It must be shown that the tax "advances a legitimate local purpose that cannot be adequately served by reasonably nondiscriminatory alternatives." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 278, 108 S.Ct. 1803, 1810, 100 L.Ed.2d 302, 311 (1988). The state bears a heavy burden in making this showing: it must establish that the justifications for the discriminatory restrictions on commerce pass the strict scrutiny test. *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250, 262 (1979). This burden is so heavy that "facial discrimination itself may be a fatal defect." *Id.*

Section 4821 dictates that the owners of several classes of personal property shall be taxed at the rate of 4 mills per annum. In addressing the Commerce Clause issue raised in the matters *sub judice*, we are concerned with only one of these classes of property. The portion of the statute which defines that particular class reads as follows:

[the personal property tax shall be due on] all shares of stock in any bank, corporation, association, company or limited partnership, created or formed under the laws of this Commonwealth or of the United States, or of any other state or government, except shares of stock in any bank, bank and trust company, national banking association, savings institution, corporation, or limited partnership liable to a tax on its shares or a gross premiums tax, or liable to or relieved from the capital stock or franchise tax for State purposes under the laws of this Commonwealth....

72 P.S. § 4821. (This clause shall hereinafter be referred to as the "stock clause".) The capital stock and franchise taxes referenced in the stock clause apply to those businesses which were either incorporated in Pennsylvania or are doing busi-

ness in Pennsylvania.[4] Thus, the only stock on which an owner is liable to pay tax pursuant to the stock clause is on stock in foreign corporations which do not do business in Pennsylvania.

The Annenbergs assert that § 4821 facially discriminates against interstate commerce since the tax is owed only on stock owned in entities which were not incorporated in or do business in Pennsylvania. They premise their argument primarily on the United States Supreme Court's recent decision in *Fulton, supra.*

At issue in *Fulton* was North Carolina's "intangibles tax" on the fair market value of shares of stock owned by its residents. Under North Carolina's taxation scheme, resident taxpayers were taxed on the value of corporate stock they owned, but were entitled to calculate their tax liability by taking a "taxable percentage deduction" equal to the percentage of the issuing corporation's income subject to tax in North Carolina. *Id.* at 328, 116 S.Ct. at 852, 133 L.Ed.2d at 803. Under this formula, the more business a corporation did in North Carolina, the lower the intangibles tax on stock in the corporation held by North Carolina residents.[5]

The United States Supreme Court determined that the North Carolina intangibles tax facially discriminated against interstate commerce. A unanimous Court pronounced that

[a] regime that taxes stock only to the degree that its issuing corporation participates in interstate commerce fa-

4. Companies organized under the laws of this Commonwealth are subject to the capital stock tax. 72 P.S. § 7602(a). The franchise tax is owed by foreign entities. 72 P.S. § 7602(b). "Foreign entity" is defined as an organization which does "business in . . . the Commonwealth or carr[ies] on activities in the Commonwealth, including solicitation or either owning or having capital or property employed or used in the Commonwealth. . . ." 72 P.S. § 7601.

5. For example, "a corporation doing all of its business within North Carolina would pay the corporate income tax on 100% of its income, and the taxable percentage deduction allowed to resident owners of that corporation's stock under the intangibles tax would likewise be 100%." *Fulton,* 516 U.S. at 328, 116 S.Ct. at 852, 133 L.Ed.2d at 803.

vors domestic corporations over their foreign competitors in raising capital among North Carolina residents. . . .

*Id.* at 327–329, 116 S.Ct. at 855, 133 L.Ed.2d at 806.

The Annenbergs assert that like the North Carolina intangibles tax, § 4821 discriminates against interstate commerce. They state that this discrimination is obvious since stock of foreign corporations which do not do business in or have a taxable nexus with Pennsylvania are subject to the tax whereas stock of corporations which were incorporated in or have some taxable nexus with this Commonwealth are exempt.

■ The County argues strenuously that § 4821 is not facially discriminatory. Its primary argument is that the Annenbergs have not shown that § 4821 has in fact had a negative impact on interstate commerce. The County seems to misapprehend the nature of the inquiry here. As a matter of semantics, when we examine whether a statute is facially discriminatory, we need only look to the language of the statute. Once we have determined that a statute is indeed facially discriminatory, we need not also determine the actual impact of the discriminatory tax. *See Brown–Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552, 559 (1986); *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388, 406–407, 104 S.Ct. 1856, 1867, 80 L.Ed.2d 388, 403 (1984).

The County also asserts that *Fulton* does not control this matter because the North Carolina taxing scheme placed a more onerous burden on interstate commerce than § 4821 does. This argument must be rejected. The United States Supreme Court has stated quite clearly that the magnitude of the negative impact on interstate commerce is irrelevant in determining whether a state provision violates the Commerce Clause. *Associated Industries of Missouri v. Lohman*, 511 U.S. 641, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994).

■ We agree with the Annenbergs that the stock clause of § 4821 is facially discriminatory. The tax is imposed on the stock of foreign corporations which do not do business in or have a taxable nexus with Pennsylvania, while the stock of

corporations which do business in or otherwise have a taxable nexus with this Commonwealth is exempted. The discrimination against foreign corporations, and the preferential treatment afforded corporations which were either incorporated in Pennsylvania or do business in Pennsylvania, is plain to see. It is beyond peradventure that the § 4821 facially discriminates against interstate commerce.

■ As we stated above, once a determination has been made that a statute is facially discriminatory, the burden then shifts to the state to establish that the statute "advances a legitimate local purpose that cannot be adequately served by reasonably nondiscriminatory alternatives." *New Energy Co.,* 486 U.S. at 278, 108 S.Ct. at 1810, 100 L.Ed.2d 302 at 311. In the language of *Fulton,* there are

> three conditions necessary for a valid compensatory tax. First, a State must, as a threshold matter, identif[y] . . . the intrastate tax burden for which the State is attempting to compensate. Second, the tax on interstate commerce must be shown roughly to approximate—but not exceed—the amount of the tax on intrastate commerce. Finally, the events on which the interstate and intrastate taxes are imposed must be substantially equivalent; that is, they must be sufficiently similar in substance to serve as mutually exclusive prox[ies] for each other.

516 U.S. at 332–333, 116 S.Ct. at 854–855, 133 L.Ed.2d at 806 (citations and internal quotation marks omitted).

■ It is apparent that these inquiries contain a significant factual component and can be properly addressed only in the context of a hearing at which the parties may introduce evidence to support their respective positions. Accordingly, pursuant to the attached order, we order the Court of Common Pleas of Montgomery County to hold a hearing on issues related to whether § 4821 is a compensatory tax. Jurisdiction is retained.[6]

---

**6.** The Annenbergs also filed two ostensible direct appeals challenging the Commonwealth Court's decision that it lacked original jurisdiction over the Annenbergs complaint. *See* Nos. 2 and 3 Middle District Appeal Docket 1997. We have yet to note probable jurisdiction in these

## *ORDER*

AND NOW, this 7th day of April, 1998, this court holds that 72 P.S. § 4821 facially discriminates against interstate commerce. Furthermore, it is hereby ORDERED that this matter is to be transferred to the Court of Common Pleas of Montgomery County, where the President Judge shall assign a judge to hold a hearing on the following issues:

1. Whether 72 P.S. § 4821 is a "compensatory tax" as defined by *Fulton Corp. v. Faulkner,* 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996).

2. If it is determined that 72 P.S. § 4821 is not a "compensatory tax," and that 72 P.S. § 4821 is therefore unconstitutional as it violates the Commerce Clause of the United States Constitution, what is the appropriate remedy.

We direct that within one hundred eighty (180) days of this order, the Court of Common Pleas of Montgomery County shall transmit to this court findings of fact and conclusions of law on the above-listed issues. Furthermore, because the case calls into question the constitutionality of a statute, the Attorney General is invited to participate. *Cf.* Pa.R.A.P. 521.

Upon the filing of the findings of fact and the conclusions of law with this court, the Prothonotary of the Supreme Court shall set a briefing schedule for the filing of briefs with this court.

Jurisdiction is retained.

matters. We shall hold these matters in abeyance pending relinquishment of our jurisdiction in the matters *sub judice.*