Bruce JOHNSON, Administrator of the
Estate of Thornton Johnson

v.

AMERICAN STANDARD, Amchem
Products, Inc., A.W. Chesterton, Inc.,
Benjamin Foster Co., Brand Insula-
tions, Brown Boveri Corp., Burnham
Boiler Corp., Certainteed Corporation,
Crane Co., Demming Division, Crane
Packing, Crouse-Hinds, Crown Cork
& Seal, Inc., Dresser Industries, Inc.,
Eastern Gunnite Co., Inc., Georgia–
Pacific Corporation, Gould Pumps,
Inc., Green Tweed & Company, Inc.,
Hajoca Plumbing Co., Ingersoll Rand
Co., J.H. Refractories Co., Metropoli-
tan Life Insurance, Nosroc Corp., Ow-
ens–Illinois, Inc., Pecora Corporation,
Riley Stoker Corporation, Union Car-
bide Corp., Walter B. Gallagher Co.,
Weil McLain Co., Viacom/Westing-
house Electric Corporation, Bondex
International Inc., Cleaver Brooks
Co., Durabla, Durametallic Corpora-
tion, General Electric Company,
Goodyear Tire & Rubber Co., Good-
year Canada, Inc., Hercules Chemical
Co., Herman Goldner Company, Imo
Industries, Inc., ITT Corporation, Mel-
rath Gasket, Inc., Pars Manufacturing
Company, Rite Hose & Packing, Inc.,
Rockbestos Company, McMaster Carr
Supply House

Appeal of Bruce Johnson.

Dorothy Mauger, Executrix of the
Estate of Russell Mauger and
in Her Own Right

v.

A.W. Chesterton, Inc., Certainteed Corp.,
Inc., Crane Co., Crane Packing,
Crown Cork & Seal Co., Inc., Durabla
Manufacturing Co., Foseco, Inc., Gar-
lock, Inc., Georgia–Pacific Corp.,
Goodyear Tire & Rubber Co., Good-

year Canada, Inc., Goulds Pumps, Inc.,
Green Tweed & Co., Inc., Hercules
Chemical Co., J.H. Refractories Co.,
Metropolitan Life Insurance, Nosroc
Corp., Pecora Corp., Rapid American
Corp., Union Carbide Corp., Via-
com/Westinghouse Electric Corpora-
tion

Appeal of Dorothy Mauger.

Dolores Stea, Administratrix of The
Estate of Joseph Stea and in
Her Own Right

v.

A.W. Chesterton, Inc., Crane Co., Dem-
ming Division, Crown Cork & Seal
Co., Inc., Foster Wheeler Corp., Inc.,
Garlock, Inc., General Electric Co.,
Goulds Pumps, Inc., Green Tweed &
Co., Inc., Melrath Gasket, Inc., Metro-
politan Life Insurance, Pecora Corpo-
ration, Rapid American Corp., Bevco
Industries, Weil McLain Co., Via-
com/Westinghouse Electric Corp.

Appeal of Dolores Stea.

Superior Court of Pennsylvania.

Argued Sept. 4, 2008.

Filed Feb. 6, 2009.

Steven J. Cooperstein, Philadelphia, for appellants.

Michael J. Stack, Thomas A. Leonard, and Mathieu J. Shapiro, Philadelphia, for Crown Cork, appellee.

Robert P. Coleman, Philadelphia, for Garlock, appellee.

Joseph Cagnoli, Jr., Philadelphia, for Weil McLain, appellee.

Joseph M. O'Neill, Philadelphia, for Pecora, appellee.

Robert N. Spinelli, Philadelphia, for Goulds, appellee.

Vincent F. Reilly, Philadelphia, for Foster, appellee.

James P. Gannon, Philadelphia, for Green Tweed, appellee.

Scott R. Lipnis, New York City, for Rapid American, appellee.

Mark D. Eisler, Philadelphia, for A.W. Chesterton, appellee.

Kevin C. Tierney, Philadelphia, for Melrath, appellee.

Edward M. Keating, III, Philadelphia, for General Electric, appellee.

Eric L. Horne, Pittsburgh, for Viacom/Westinghouse, appellee.

George D. Bruch, Jr., Philadelphia, for Crane, appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, ORIE MELVIN, LALLY–GREEN, KLEIN, GANTMAN, PANELLA AND DONOHUE, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 In these asbestos cases, Appellants Bruce Johnson, *et al.* appeal from the orders dated October 3, 2006, granting summary judgment to Appellee Crown Cork & Seal Co. ("Crown"). The trial court reasoned that Crown was insulated from liability by 15 Pa.C.S.A. § 1929.1 ("the Statute"). Appellants agree that the Statute, on its face, protects Crown. Appellants argue, however, that the Statute: (1) violates the dormant Commerce Clause of the United States Constitution; (2) violates the Equal Protection Clause of the U.S. Constitution and the Pennsylvania Constitution; and (3) violates various enactment provisions of the Pennsylvania Constitution. We conclude that Appellants lack standing to raise these constitutional challenges. Therefore, we affirm.

¶ 2 The factual and procedural history of the case may be simply stated as follows. Appellants are executors of the estates of three individuals who died of asbestos-related mesothelioma. Appellants sued Crown and numerous other defendants. All defendants other than Crown have settled. Crown filed motions for summary judgment in all three cases, arguing that the Statute protected Crown from liability. Appellants raised constitutional challenges to the Statute. The trial court rejected those challenges and granted summary judgment to Crown. These consolidated appeals followed.

¶ 3 Appellants raise one issue on appeal:

1. Did the lower court err in ruling that Crown Cork & Seal Company, Inc., was entitled to summary judgment?

Appellants' Brief at 5.[1]

¶ 4 As noted above, Appellants argue that the trial court erred in applying the Statute to Crown, because the Statute is unconstitutional. Our standard of review is as follows:

Under the applicable standard, an appellate court may reverse a trial court's entry of summary judgment only where it finds that the trial court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. As this inquiry involves solely questions of law, our standard of review is *de novo.*

*Ieropoli v. AC & S Corp.*, 577 Pa. 138, 842 A.2d 919, 924 n. 10 (2004) (citations omitted).

Additionally, any party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a

---

1. Appellants complied with the trial court's orders to file concise statements of matters complained of on appeal under Pa.R.A.P. 1925. In the *Mauger* and *Stea* appeals, the Honorable Allan Tereshko addressed Appellants' claims on the merits, but also suggested that the claims were waived because the concise statements were too vague. In our view, Appellants' concise statements were not impermissibly vague. Moreover, the trial court issued a thorough opinion on the merits. Accordingly, we do not conclude that the issues are waived.

demonstration that the statute clearly, palpably, and plainly violates the Constitution. As with any challenge to the constitutionality of a statutory amendment, our scope of review is plenary and our standard of review is *de novo.*

*Konidaris v. Portnoff Law Assocs.,* 953 A.2d 1231, 1239 (Pa.2008) (citations and quotation marks omitted).

¶5 Before addressing Appellant's claims, we will begin with a brief discussion of the Statute itself, and its effect on Crown and this litigation. The Statute limits the asbestos-related liability of Pennsylvania corporations when that liability arises from a merger or consolidation. In general, the Statute caps the successor corporation's asbestos-related liability at the fair market value of the prior company as of the time of the merger or consolidation. The statute reads, in relevant part, as follows:

§ 1929.1. **Limitations on asbestos-related liabilities relating to certain mergers or consolidations.—**

(a) Limitation on successor asbestos-related liabilities.

(1) Except as further limited in paragraph (2) the cumulative successor asbestos-related liabilities of a domestic business corporation that was incorporated in this Commonwealth prior to May 1, 2001, shall be limited to the fair market value of the total assets of the transferor determined as of the time of the merger or consolidation, and such corporation shall have no responsibility for successor asbestos-related liabilities in excess of such limitation.

15 Pa.C.S.A. § 1929.1(a)(1) (effective December 17, 2001).[2]

¶6 The effect of the Statute on Crown is undisputed. Crown is a bottle-cap and can manufacturer based in Pennsylvania. In November 1963, Crown purchased Mundet Cork Corporation. Mundet Cork operated a division that manufactured asbestos products. Crown never operated this division. Within 90 days of acquiring Mundet Cork, Crown sold the asbestos-related division.

¶7 Despite this fleeting involvement with asbestos, in the ensuing years Crown has paid hundreds of millions of dollars in asbestos-related claims. The value of those claims far exceeds the fair market value of Mundet Cork itself.

¶8 Under the plain language of the Statute, Crown is not liable for Appellants' claims because Crown has already paid out asbestos liabilities exceeding the fair market value of Mundet Cork. Because the last remaining defendant, Crown, has been granted summary judgment, the appeal is properly before us.

¶9 With that background in mind, we turn to Appellants' claims. First, Appellants argue that the Statute violates the dormant Commerce Clause of the United States Constitution, Art. 1 § 8 cl. 3. "The dormant Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Office of Disciplinary Counsel v. Marcone,* 579 Pa. 1, 855

**2.** In *Ieropoli,* 842 A.2d at 932, our Supreme Court held that the Statute was unconstitutional under the Remedies Clause (Article 1, Section 11) of the Pennsylvania Constitution, because it extinguished existing causes of action. In response to *Ieropoli,* the Legislature passed 42 Pa.C.S.A. § 5524.1(b) to correct the Remedies Clause violation. Specifically,

§ 5524.1(b) states that the Statute does not bar claims where the statute of limitations commenced on or before the Statute's effective date. Here, it is undisputed that the statute of limitations on Appellants' claims all began to run after the effective date of the Statute. Thus, it is undisputed that there is no Remedies Clause violation in this case.

A.2d 654, 666 (2004), *cert. denied,* 543 U.S. 1151, 125 S.Ct. 1332, 161 L.Ed.2d 114 (2005), *quoting New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). Appellants claim that the Statute is a prohibited form of economic protectionism, because it benefits Pennsylvania corporations at the expense of out-of-state corporations.

¶ 10 Before addressing this claim, we must address the threshold question of whether Appellants lack standing to raise a dormant Commerce Clause challenge. Crown notes that Appellants are individual plaintiffs, not out-of-state corporations; thus, Appellants are not aggrieved by any protectionistic effect that the Statute may have. Appellants counter that they are aggrieved by the Statute as a whole, because it extinguishes their claims against Crown. Appellants argue that as a result, they are entitled to raise any constitutional challenge to the Statute.

¶ 11 In *Commonwealth v. Rose,* 2008 PA Super 249, 960 A.2d 149, this Court recently addressed a party's standing to raise a dormant Commerce Clause claim. In that case, a criminal defendant raised a dormant Commerce Clause challenge to a criminal statute prohibiting unauthorized sexual communication with a minor. The defendant argued that the statute penalized an out-of-state resident who may have no knowledge that the minor is located in Pennsylvania, where such contact is prohibited.

¶ 12 We began with general concepts of standing:

> "The core concept in any standing analysis is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." *Soc'y Hill Civic Ass'n v. Pa. Gaming Control Bd.,* 593 Pa. 1, 928 A.2d

175, 184 (2007). Generally, in order to have standing a person must have a "substantial, direct, and immediate interest" in the outcome of the litigation. *Id.* A person does not have a direct interest if he has not been harmed by the specific constitutional concern at issue. *Id.; see also Commonwealth v. Bell,* 512 Pa. 334, 516 A.2d 1172, 1177 (1986); *Commonwealth v. Haldeman,* 288 Pa. 81, 135 A. 651, 652 (1927). *Id.* at ¶ 9. We then held that the defendant lacked standing to raise a dormant Commerce Clause challenge, because he was not an out-of-state resident and thus not aggrieved by the specific constitutional concern at issue. *Id.* at ¶ 10. We came to this conclusion even though the defendant was obviously "aggrieved" by the statute as a whole, because he was convicted thereunder.

¶ 13 By insisting on a direct link between harm and "the specific constitutional concern at issue," Pennsylvania Courts have echoed the concept of "prudential standing" found in federal decisions. *See, e.g., Oxford Assocs. v. Waste Sys. Auth.,* 271 F.3d 140 (3rd Cir.Pa.2001); *Individuals for Responsible Gov't. v. Washoe County,* 110 F.3d 699 (9th Cir.Nev.1997). Indeed, our Supreme Court has noted that "[t]he requirement of standing under Pennsylvania law is prudential in nature, and stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract." *City of Philadelphia v. Commonwealth,* 575 Pa. 542, 838 A.2d 566, 569 (2003).

¶ 14 Under the concept of prudential standing, the challenger to a statute must demonstrate, *inter alia,* how he or she falls within the "zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based." *Oxford Assocs.,* 271 F.3d at 146

(citation omitted). Consumers and others not directly affected by the regulation may assert dormant Commerce Clause challenges, but only if they establish that they fall within the zone of interests. *Id.* For example, in *Oxford Assocs.*, the plaintiffs were building owners who challenged the fee structure of a county waste authority. Under the fee structure, the owners were forced to pay a waste generation fee (WGF) to a local facility at a rate far exceeding the interstate market rate.[3] The building owners asserted that the authority's fee structure violated the dormant Commerce Clause. The authority countered that the owners lacked standing. The Court of Appeals for the Third Circuit held that the owners did have standing, even though they were not in direct competition with the local facility. The Court held that because the fee structure burdened interstate commerce at the direct expense of the building owners:

> In paying the WGF, they are directly paying the costs of maintaining the preferred facility and they are precluded by economic factors from accessing less expensive waste processing facilities. As a result, their interests, as consumers of waste processing services, are within the zone of interests intended to be protected by the Commerce Clause.

*Oxford Associates*, 271 F.3d at 147.

¶ 15 In the instant case, Judge Tereshko held that Appellants lacked standing to raise a dormant Commerce Clause challenge, because Appellants were not aggrieved by any dormant Commerce Clause aspect of the Statute. Judge Tereshko noted that the Statute dismissed only one asbestos defendant from the case, and that the remaining asbestos defendants are generally considered to be joint tortfeasors. *Mauger v. A.W. Chesterton, Inc. et al.*, 2007 Phil. Ct. Comm. Pl. Lexis 193, *42–45. Any dormant Commerce Clause concerns in the Statute do not adversely affect Appellants, because they may recover all of their damages from the remaining defendants through settlement or otherwise. *See id.*[4] Any preferential treatment of in-state corporations had a minimal effect, if any, on Appellants. *Id.* We agree with the trial court's analysis. Appellants have failed to demonstrate how any alleged violation of the dormant Commerce Clause had a tangible effect on their interests.[5]

¶ 16 Appellants' limited arguments to the contrary are unavailing. First, Appellants argue that they have standing because the Statute barred their claims against Crown. As noted above, this general allegation of harm is insufficient in the absence of a link to the specific constitutional violation being asserted. *See City of Philadelphia*, 838 A.2d at 577.

¶ 17 Next, Appellants assert that standing exists because our Supreme Court en-

---

3. The fee was used to finance the expense of bonds used to create the local facility. The authority could impose liens on the owners' property if the owners failed to pay the fee.

4. We will assume *arguendo* that Appellants have standing to appeal the trial court's order. Appellants are aggrieved to the extent (if any) that the Statute extinguishes an otherwise-viable cause of action. *See generally* Pa. R.A.P. 501; *Ieropoli; Konidaris. But see Pittsburgh Palisades Park LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655 (2005) (party that is not aggrieved by the underlying

statute at issue lacks standing to raise constitutional challenges thereto). This is not to say that Appellants necessarily have standing to assert the specific constitutional claims that they have asserted here.

5. Our Supreme Court has held that the standing requirement is satisfied so long as one challenger in a multi-party appeal has standing. *Pennsylvanians Against Gambling Expansion Fund Inc., et al. [PAGE] v. Commonwealth*, 583 Pa. 275, 877 A.2d 383, 393 (2005). Here, none of the Appellants has demonstrated standing.

tertained the merits of a constitutional challenge to the Statute in *Ieropoli.* For several reasons, we disagree. First, we note that our Supreme Court heard *Ieropoli* through an unusual, discretionary exercise of extraordinary jurisdiction under 42 Pa.C.S.A. § 726. *Ieropoli,* 842 A.2d at 924. The high Court's exercise of extraordinary jurisdiction on a specific constitutional matter does not translate into a global holding that other parties have standing to raise other constitutional challenges, particularly when standing is a prudential matter. Second, and on a related note, the Court simply made no mention of standing in *Ieropoli.* Finally, the plaintiffs in *Ieropoli* were more aggrieved by the particular constitutional violation at issue: they claimed that the Statute unconstitutionally extinguished an accrued cause of action. In short, Appellants' reliance on *Ieropoli* is misplaced. Appellants' first claim fails for lack of standing.

¶ 18 Next, Appellants argue that the Statute violates the Equal Protection Clause of the United States Constitution because it discriminates against out-of-state corporations. We conclude that for the same reasons set forth above, Appellants lack standing to raise this claim.[6]

■ ¶ 19 Finally, Appellants argue that the Statute was enacted in an unconstitutional manner. Our Supreme Court has insisted that a party raising such a claim must, again, first demonstrate standing. For example, in *PAGE,* 877 A.2d at 393, the Court held that legislators had standing to challenge the method of enacting the Gaming Act. In *City of Philadelphia,* 838 A.2d at 579, the Court held that the City of Philadelphia had standing to raise an enactment challenge to a law that ad-

---

**6.** Appellants cite *WHYY, Inc. v. Borough of Glassboro,* 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968). In that case, plaintiff WHYY was a Pennsylvania nonprofit corporation that was licensed and qualified to do business in New Jersey. WHYY had a production facility in New Jersey. WHYY would have been entitled to a tax exemption for that facility, but for the fact that it was incorporated within Pennsylvania. The Supreme Court held that this unequal treatment under New Jersey law lacked any rational basis and violated the Equal Protection Clause. *WHYY* is clearly distinguishable because the WHYY plaintiff was directly affected by the unequal treatment.

In the same section of their brief, Appellants cite *Moyer v. Phillips,* 462 Pa. 395, 341 A.2d 441 (1975). Here, Appellants raise a different type of equal protection claim. In *Moyer,* our Supreme Court examined a statute that provided that causes of action survive the death of the plaintiff, except for causes of action relating to libel or slander. The Court held that the statute violated equal protection principles because it was arbitrary. The Court explained equal protection principles as follows:

> The Equal Protection Clause of both constitutions does not deny the State the power to treat different classes of persons in different ways, but does deny the right to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the particular statute. The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike.

*Id.* at 443. In *Moyer,* the Court held that there was no rational basis for drawing a distinction between deceased plaintiffs who suffered an injury to reputation, and deceased plaintiffs who did not.

Here, Appellants allege a similar equal protection violation with a bare, one-sentence citation to *Moyer.* Appellants have failed to develop their claim in any meaningful fashion, other than alleging that their claim is somehow analogous to *Moyer.* With only this underdeveloped argument, Appellants have not carried their "heavy burden" of demonstrating that the statute "clearly, palpably, and plainly violates the Constitution." *Konidaris.* This claim fails.

versely and directly affected the city's "government functions relative to collective bargaining, budget management, and urban renewal." *Id.* The City further alleged that the statute was enacted in a way that forced lawmakers to vote on a large number of complex issues under a strict deadline, so that only a "small circle of insiders" would know the full effects of the law. *Id.* at 575–576.

¶ 20 Here, in contrast, Appellants have made no attempt to establish standing. Rather, they proceed directly to the merits of their claim. We conclude that Appellants lack standing because they have failed to demonstrate that they had a substantial, direct, and immediate interest in a challenge to the enactment of the Statute. Appellants' final claim fails.

¶ 21 Orders affirmed.

¶ 22 KLEIN, J.: files a dissenting opinion in which MUSMANNO, PANELLA, and DONOHUE, JJ. join.

## DISSENTING OPINION BY KLEIN, J.:

¶ 1 I believe the plaintiffs have standing to challenge the constitutionality of the so-called "Crown Cork and Seal Act".[1] I further believe that so-called statute is unconstitutional because it is in violation of the Commerce Clause of the United States Constitution,[2] and it constitutes a denial of equal protection rights.[3] I agree with the majority that the statute was not constitutionally flawed in the manner of its enactment.[4] Therefore, because I believe that section 1929.1 represents an unconstitutional infringement upon equal protection under the law and further violates the commerce clause, I would hold it unen-

forceable and therefore respectfully dissent.

¶ 2 I believe that the statute treats similarly situated people differently because people injured by products made by an out-of-state corporation that acquired an asbestos company can recover, but people injured by products made by an in-state corporation that acquired an asbestos company cannot recover. Therefore, the statute violates equal protection.

¶ 3 Further, I believe that there is a commerce clause violation because there is protection for in-state corporations but not similarly situated out-of-state corporations. While the commerce clause was intended to protect corporations in commerce rather than individuals injured by products, once there is a commerce clause violation, anyone injured by the violation has standing to bring a lawsuit and can recover. I believe a plaintiff deprived of a remedy because of the commerce clause violation should be considered injured by the violation.

## Standing

¶ 4 The majority holds that plaintiffs in personal injury lawsuits do not have standing to complain about the violation of the commerce clause. I disagree. I believe there are two aspects to consider when determining whether a plaintiff may complain of a violation of a constitutional right. First, that the right was violated. Second, that he or she was adversely affected by constitutional violation. In fact, the majority states this principle in its opinion, saying:

¶ 5 "We begin with general concepts of standing:

---

1.  15 Pa.C.S.A. § 1929.1

2.  U.S. Const., Art. I, § 8, cl. 3.

3.  U.S. Const., Amend. 14; Pa. Const., Art. 1, §§ 11, 26.

4.  Pa. Const., Art. 3, §§ 1, 3.

The core concept in any standing analysis is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." *Soc'y Hill Civic Ass'n v. Pa. Gaming Control Bd.*, 593 Pa. 1, 928 A.2d 175, 184 (2007) . . .

Majority Opinion at 577.

¶ 6 I start with the premise that the statute violates the commerce clause because it gives an advantage to a Pennsylvania corporation. Crown Cork and Seal and any other hypothetical Pennsylvania corporation that might have acquired an asbestos company do not have to worry about massive tort liability that confronts non-Pennsylvania corporations similarly situated.

¶ 7 The majority says that even if a non-Pennsylvania corporation can complain of the commerce clause violation, a Pennsylvania citizen injured by the product of the corporation to which Crown Cork and Seal is the successor cannot. The majority recognizes that "[c]onsumers and others not directly affected by the regulation may assert dormant Commerce Clause challenges, but only if they establish that they fall within the zone of interests."

¶ 8 In *Oxford Assocs. v. Waste Sys. Auth.*, 271 F.3d 140 (3d Cir.2001), consumers of a favored waste facility, as well as competitors, had the right to sue claiming commerce clause violations. The principle is that standing is appropriate "where the underlying controversy is real and concrete, rather than abstract." *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566, 569 (2003). Here, Johnson and others similarly situated are denied their right to tort damages because of a statute that benefits Pennsylvania corporations and does not benefit out-of-state corporations. These are real, concrete rights that are taken away by a statute giving benefit to only Pennsylvania corporations. The majority claims that this is not a substantial loss because there are still joint tortfeasors against whom plaintiffs might collect. This is putting the cart before the horse as there has not yet been any showing or determination of which companies are responsible to which plaintiffs. It could be that only products that can be identified satisfactorily came from Mundet or from Mundet and one or more companies that have gone through bankruptcy. If this is so, then these Pennsylvania citizens will be unable to collect whatever damages that might rightfully be theirs.

¶ 9 In *Annenberg v. Commonwealth I*, 562 Pa. 570, 757 A.2d 333 (1998); *Annenberg v. Commonwealth II*, 562 Pa. 581, 757 A.2d 338 (2000), the "commerce" violation was the discrimination in favor of in-state corporations against out-of-state corporations, as it is here. It was not the *corporation* that brought the lawsuit but instead the taxpayer that was hurt. That is the situation here—while the purpose of the commerce clause may be to avoid harm to those out-of-state, when an individual citizen is also injured by the violation of the commerce clause, that citizen has the right to bring an action.

¶ 10 This is far different than the situation in the case relied on by the majority, which denied a dormant commerce clause claim to a Pennsylvania resident who complained that the criminal statute prohibiting unlawful contact with a minor might violate the commerce clause if a non-Pennsylvanian carried out the communication from out of state. *Commonwealth v. Rose*, 2008 PA Super 249, 960 A.2d 149. The reason there was no standing in that case was that Rose was a Pennsylvania resident who was making a claim that a non-Pennsylvania resident might be improperly ens-

nared by the law in question. Thus, Rose's claim regarding a possibly disadvantaged hypothetical non-Pennsylvanian was simply an abstraction.

¶ 11 As a matter of fundamental fairness, one might note that it seems strange that an unconstitutional act that violates the commerce clause can be challenged by an out-of-state corporation, in this case a possible codefendant, but not an aggrieved Pennsylvania citizen.

¶ 12 I would find that allowing a Pennsylvania corporation to avoid liability for a company it acquired while a non-Pennsylvania corporation cannot avoid such liability gives an unfair advantage to the Pennsylvania corporation and therefore violates the commerce clause. Since the plaintiffs in these cases have real, concrete damages because of the protectionism given to the Pennsylvania corporation, their rights are violated. Thus, I believe these plaintiffs have standing to raise their constitutional claims.

**Equal protection**

¶ 13 I agree with the general proposition that the Pennsylvania legislature has the right to enact statutes which control the fate of Pennsylvania corporations. What the Pennsylvania legislature cannot do is enact a statute that improperly grants favor to a Pennsylvania corporation while putting foreign corporations at a disadvantage such that the due process rights of a plaintiff are adversely affected.

¶ 14 In *Ieropoli v. AC & S. Corp.*, 577 Pa. 138, 842 A.2d 919 (2004), our Supreme Court held the statute now at issue unconstitutional because it denied the due process rights of individuals whose cause of action had vested prior to the enactment of the law. This is a classic violation of due process. Our Supreme Court left open, however, the question of the constitutionality of the statute as applied to those causes of action that accrued *after* December 17,

2001 (such as the instant case). That is question is now before us.

¶ 15 The essence of equal protection is simply that persons of a class cannot be denied the protection of the laws that other persons of the same class enjoy. *See* U.S. Const., Amend. 14; Pa. Const., Art. 1, § 26.

¶ 16 Here, defendants in asbestos litigation are the main class of persons involved. However, § 1929.1 carves out a sub-class of defendants currently consisting of a single Pennsylvania corporation which is subject to the payment of damages through the legal concept of successor liability. One might also find the main class consists of corporations which are subject to the payment of damages through successor liability and the sub-class to be corporations subject to the payment of asbestos damages through successor liability.

¶ 17 In either event, there is no clear showing why a foreign corporation that is subject to the payment of damages for asbestos-related harm through successor liability should be denied a similar protection. In this manner, I believe that *WHYY, Inc. v. Borough of Glassboro*, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968), is instructive. In *WHYY*, the United States Supreme Court found it to be a violation of equal protection for New Jersey to deny a foreign corporation the benefit of certain tax exemptions that were allowed to New Jersey registered nonprofit corporations. The Supreme Court stated:

This Court has consistently held that while a State may impose conditions on the entry of foreign corporations to do business in the State, once it has permitted them to enter, 'the adopted corporations are entitled to equal protection with the state's own corporate progeny, at least to the extent that their property

is entitled to an equally favorable ad valorum tax basis.'

*Id.* at 119, 89 S.Ct. 286 (citations omitted).

¶ 18 While the matter before us is not a tax issue, I can see no reason why the logic of the *WHYY* decision would not be applicable here. Once the Commonwealth of Pennsylvania allowed corporations that had asbestos liability into the Commonwealth to do business, it must treat those adoptive corporations the same as it treats Pennsylvania corporations. Or, once the Commonwealth allows any corporation which has accepted liability through purchase or merger of another corporation into Pennsylvania, it must offer similar protection to that foreign corporation.[5] By allowing this benefit to a Pennsylvania corporation, foreign corporations would have to pay more than their proportional share of damages and would be unable to seek contribution from a protected Pennsylvania corporation.

¶ 19 While it appears that the statute in question treats similar corporations dissimilarly, in violation of equal protection of laws, it is more important under the facts of this case, how that dissimilar treatment affects the rights of plaintiffs.[6]

¶ 20 Here, the estates of the decedents are forbidden from seeking redress from a source of possible liability simply because that source, a Pennsylvania corporation, acquired the liability through the purchase of another corporation and by dint of the fact that their claims were unknown until after December 17, 1993. Thus, if Thornton Johnson (to use a single decedent as an example) had been exposed to any other asbestos manufacturer or supplier other than Mundet/Crown Cork, he would be entitled to seek full redress from all those responsible. Similarly, if Johnson had known of his illness prior to December 17, 1993 he would also be entitled to seek redress from Mundet/Crown Cork.

¶ 21 If we suppose that Johnson were, in fact, exposed to asbestos from a Mundet product, and if we further suppose that the exposure can be linked to his fatal disease, then the simple fact that the disease may have taken a bit longer to manifest itself in Johnson than in another now prevents Johnson from seeking compensation from a responsible party, possibly the only responsible party. Thus, Johnson has been denied equal protection of the law due to the operation of 15 Pa.C.S. § 1929.1. Not only has equal protection been violated as regarding the Fourteenth Amendment and Article 1, section 26 of the Pennsylvania Constitution, but the application of section 1929.1 also offends equal protection under Article 1, section 11, which provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right

---

**5.** I am aware that the *WHYY* decision has been distinguished by *Feniello v. University of Pennsylvania Hospital,* 558 F.Supp. 1365 (D.C.N.J.1983), which stated, regarding *WHYY:* "There is no indication in the opinion that the same ruling would apply to the state's power to grant a corporation limited immunity from tort liability." I believe Feniello is inapplicable for a number of reasons. First, this is merely dicta from the federal district court and is not binding upon us. Second, and most importantly, in Feniello, the hospital did no business in New Jersey yet sought the protection of New Jersey charitable laws,

the denial of which was not unconstitutional. Here, all other defendants are doing business in Pennsylvania, thus would be subject to Pennsylvania law.

**6.** The dissimilar treatment of corporations may not be properly before us because no other defendant corporation has complained of unequal protection. However, the analysis is still important because of the way the dissimilar treatment of corporations' impacts upon the treatment of plaintiffs. Thus, we do not believe this analysis is uncalled for *dicta.*

and justice administered without sale, denial or delay.

Pa. Const., Art. 1, § 11.

¶ 22 The estate of Thornton Johnson is entitled to seek the full measure of remedy against those who may have caused him harm. Section 1929.1 prevents that from happening by arbitrarily disallowing Johnson to seek a constitutionally guaranteed remedy on the basis of the date he knew of his injury and because the legislature has opted to treat a single Pennsylvania corporation differently from any and every other foreign corporation.

**Commerce Clause**

¶ 23 I also believe that the Crown Cork and Seal Act violates the Commerce Clause of the United States Constitution, Art. 1, cl. 3. As the majority notes, "the dormant Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Office of Disciplinary Counsel v. Marcone*, 579 Pa. 1, 855 A.2d 654, 666 (2004). It is hard to dispute that the Crown Cork and Seal Act gives an advantage to those Pennsylvania Corporations that acquired asbestos companies while *not* giving such protection to out-of-state corporations who made similar acquisitions.

¶ 24 In *Granholm v. Heald*, 544 U.S. 460, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005), the United States Supreme Court used the dormant commerce clause to strike down provisions in Michigan and New York that allowed in-state but not out-of-state wineries to make direct sales to consumers. In that case, the United States Supreme Court, citing *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13, (1994), said:

This Court has long held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). Laws such as those at issue contradict the principles underlying this rule by depriving citizens of their right to have access to other States' markets on equal terms. 544 U.S. at 461, 125 S.Ct. 1885.

¶ 25 In *Fulton Corp. v. Faulkner*, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), the United States Supreme Court struck down a North Carolina "intangibles tax" that taxed the value of corporate stock owned by state residents in inverse proportion to the corporation's exposure to the state's income tax, holding it discriminated against interstate commerce.

¶ 26 Following *Fulton*, the Pennsylvania Supreme Court in *Annenberg I*, and *Annenberg II, supra*, struck down a provision imposing personal property tax on the value of stock held by out-of-state corporations but not in-state corporations. Here it was the *taxpayer* that objected to the tax, not one of the corporations that might have been harmed by the tax that impaired commerce.

¶ 27 It seems abundantly clear to me that 15 Pa.C.S.A. § 1929.1 provides the "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter" that is constitutionally forbidden.

¶ 28 For these reasons, I would reverse the lower court determination and allow these plaintiffs to pursue their claims. Accordingly, I dissent.