[J-17-2015] [OAJC: Saylor, C.J.]

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | |
|---|---|
| IN RE: THE THIRTY-FIFTH STATEWIDE INVESTIGATING GRAND JURY | : No. 197 MM 2014 |
| | : |
| | : |
| | : |
| | : |
| | : |
| PETITION OF: ATTORNEY GENERAL, KATHLEEN G. KANE | : ARGUED:  March 11, 2015 |
| | : |

## CONCURRING OPINION

**MR. JUSTICE BAER**                              **DECIDED:  March 31, 2015**

In 2014, information was leaked to the media that was subject to secrecy in connection with a statewide grand jury that was sitting in 2009 before Judge Barry Feudale (hereafter, the Feudale grand jury).[1]  Judge Feudale is no longer part of Pennsylvania's active judiciary and the grand jury over which he presided has long since concluded.  Judge William R. Carpenter was the supervising judge of the thirty-fifth statewide investigating grand jury, which was empaneled in January 2013 and has recently concluded.  He determined that there were reasonable grounds to believe an investigation should be conducted to determine the source of the 2014 leaks of the secret testimony from the 2009 Feudale grand jury.  To this end, he appointed Thomas E. Carluccio as a "special prosecutor" to conduct an investigation into contempt incident

---

[1]    See 42 Pa.C.S. § 4549(b) (establishing grand jury secrecy and providing that any person who violates secrecy "shall be in contempt of court.").

to any grand jury secrecy leak and crimes related thereto, and provided Mr. Carluccio with expansive prosecutorial powers.

The Attorney General, Kathleen G. Kane, argues that there was no legal authority for the appointment of a special prosecutor, and that the designation violates the constitutional separation of powers in that it infringes on her office's investigatory and prosecutorial function. To vindicate her position that Judge Carpenter exceeded his powers by appointing Mr. Carluccio, the Attorney General brings this *quo warranto* action presenting the narrow legal issue of whether this Court should quash the appointment of the special prosecutor by Judge Carpenter in connection with alleged leaks from the Feudale grand jury, and, in accord with that quashal, suppress the proceedings as void *ab initio*.

On the limited issue presented, I agree with the Opinion Announcing the Judgment of the Court (OAJC) that *quo warranto* relief should be denied because the supervising judge possessed inherent authority to appoint an individual to investigate the leak of grand jury testimony to protect the sanctity of the prior grand jury proceeding and to remedy any breach of statutorily mandated secrecy through contempt findings.[2] I write separately because I believe that Judge Carpenter's appointment order, which the OAJC seemingly endorses, attempted to bestow upon Mr. Carluccio power that far

---

[2] The Attorney General has argued that Judge Carpenter lacked authority to appoint a special prosecutor to investigate the breach of grand jury secrecy because it was related to the concluded grand jury. While I agree with the Attorney General that leaks of grand jury information should be vindicated by the supervising judge of that grand jury, that may not always be possible. In this case specifically, the Feudale grand jury has concluded and Judge Feudale is no longer part of the active judiciary. Under these circumstances, it is appropriate for a different supervising judge to oversee the investigation into the source of the leaks.

exceeded the authority to investigate contempt and to report his findings to the court. It is only because Judge Carpenter had the power to appoint a person to investigate contempt, Mr. Carluccio acted in accord with that power, and because Mr. Carluccio did not ultimately employ that aspect of the excessive grant of power by attempting to prosecute the Attorney General, instead submitting the grand jury presentment to the District Attorney of Montgomery County for consideration, that I am able to join the OAJC's mandate.

When a court seeks to engage in fact-finding, it employs a special master, not a special prosecutor. The function of a special master is to gather necessary factual information, consider pertinent legal questions, and provide the court with recommendations.[3] Special masters operate as an arm of the court, investigating facts

---

[3] See e.g. In re J.V.R., No. 81 MM 2008, 2/11/2009 (*per curiam*) (noting that the Supreme Court appointed a special master to review all Luzerne County juvenile court adjudications and dispositions that had been affected by a trial judge's criminal actions and to make recommendations to the Court concerning appropriate remedial actions); Commonwealth v. Rony, 79 A.3d 595 (Pa. 2013) (Saylor, J., dissenting) (acknowledging that the Supreme Court appointed a special master to consider a petition challenging Philadelphia's compensation system for defense counsel in capital criminal cases); Levy v. Senate of Pennsylvania, 65 A.3d 361 (Pa. 2013) (approving the factual determinations and legal conclusions made by a special master appointed by the Commonwealth Court to review *in camera* particular documents allegedly subject to the Pennsylvania Right to Know Act); Annenberg v. Commonwealth, 757 A.2d 333 (Pa. 1998) (appointing a special master to make findings of fact and conclusions of law regarding whether a taxing statute violated the Commerce Clause of the United States Constitution); Pa. State Ass'n of County Comm'rs v. Commonwealth, 681 A.2d 699 (Pa. 1996) (appointing a special master to prepare recommendations to the Supreme Court regarding the implementation of the unified judicial system); Commonwealth v. Banks, 29 A.3d 1129 (Pa. 2011) (appointing a trial court judge as a special master to make findings of fact and conclusions of law relating to a challenge to the competency of a defendant to be executed). See also In re City of Pittsburgh, 600 A.2d 630, 632 Pa. Cmwlth. 1991) (holding that "[c]ourts historically possess the inherent authority to appoint masters to assist them in performing their various functions").

on behalf of the court and communicating with it to keep it apprised of its findings; they do not act as independent prosecutors.

Turning to the appointment at issue in this case, it is important to keep in mind that the consequence for violating grand jury secrecy is contempt of court, see 42 Pa.C.S. § 4549(b). The authority to punish for contempt is a right that is "inherent in courts and is incidental to the grant of judicial power under Article 5 of our Constitution." Commonwealth v. McMullen, 961 A.2d 842, 849 (Pa. 2008). Under circumstances where a judge finds there are reasonable grounds to believe a further investigation is warranted into allegations of a violation of grand jury secrecy, an indirect criminal contempt of court, it would be appropriate to appoint a special master to assist the judge in this factual endeavor. This is precisely what occurred in In re Dauphin County Fourth Investigating Grand Jury, 19 A.3d 491 (Pa. 2011), notwithstanding, in my view, this court's unfortunate use of the term "special prosecutor," which has contributed to the confusion requiring this explanation.

In Dauphin County, we remanded to the supervising judge of a sitting grand jury for an evidentiary hearing relating to allegations of a breach of grand jury secrecy. Id. at 497. Following the evidentiary hearing, this Court again considered the matter and again remanded, but this time to the President Judge of the Dauphin County Court of Common Pleas to appoint a "special prosecutor" for the specific purpose of "conduct[ing] further inquiry into the allegations of violations of the secrecy provisions of the Investigating Grand Jury Act . . . and to oversee such inquiry. . ." Id. at 498. Notwithstanding what I believe to be the imprecise terminology of "special prosecutor," the limited purpose for which we authorized the appointment indicates that our intent

was a narrow fact-finding mission to delve into allegations of contempt. The special prosecutor we referenced should more properly have been referred to as a special master.

In accord with the restricted nature of our mandate, the President Judge appointed a special master under the misnomer of "special prosecutor," with a narrowly defined mission and authority: to conduct inquiry into allegations of violations of grand jury secrecy; upon approval of the court, to retain reasonable investigative, clerical, and secretarial services to facilitate his duties; to have the proceedings transcribed; to review the grand jury transcripts; to keep the court apprised of the status of the investigation; to present a final report of findings and reasons therefore; and to maintain all matters under seal. Id. at 499. Importantly, the order also provided that if the "special prosecutor" required compelled testimony or documents, he had to petition the court for the issuance of subpoenas and the scheduling of a hearing with all of the trappings of due process. Id.

Therefore, In re Dauphin Co., despite what I believe was loose and unfortunate prose, provides authority for the appointment of a special master for the limited purpose of determining the source of illegal leaks of grand jury information with limited investigating functions, under court supervision, and with full due process rights afforded to all involved. Notably, the appointing judge in that case did not authorize the special master to utilize the investigative authority of a grand jury, generally to investigate crimes, or to prosecute crimes.

Judge Carpenter's order appointing the special prosecutor in the matter before us was in part consistent with my understanding of the use of a special master to

investigate contempt of court (which allows me to join the mandate herein), and, in part, inconsistent therewith because its expansive mandate gave the "special prosecutor" excessive investigative and prosecutorial power. Specifically, Judge Carpenter's order provided that the special prosecutor was appointed to investigate and prosecute any offenses related to "any alleged illegal disclosure of information protected by the law," including violations of grand jury secrecy, 42 Pa.C.S. § 4549(b), obstructing the administration of law or other government function, 18 Pa.C.S. § 5101, or "any other applicable offense."

The supervising judge further ordered that the "special prosecutor" was authorized to use the sitting grand jury to investigate such crimes; request immunity orders from the Attorney General; to have "day-to-day independence" and "independent prosecutorial discretion whether, which and when any potential witness should be brought before the Grand Jury and/or whether, which and when charges should be brought, including contempt of court;" to consult with members of the Office of Attorney General; to respond to interference with his investigation by investigating and prosecuting crimes committed in connection with the interference (including perjury and intimidation of witnesses); to provide the supervising judge periodic summaries of his progress; and submit a report setting forth his findings and recommendations.

In addition to penning an inappropriately broad order, Judge Carpenter also permitted improper and relatively constant *ex parte* communication between Mr. Carluccio and himself, offending notions of fundamental fairness. While such communication may have been understandable if this scenario was simply one involving a special master, here, as noted, the court attempted to vest Mr. Carluccio with the vast

general authority of a prosecutor. Additionally, even when it became apparent that the investigation had focused on the Attorney General, the supervising judge conducted *ex parte* hearings with the special prosecutor and selected witnesses, resulting in orders to the detriment of the Attorney General, all the while engaging the special prosecutor *ex parte* and excluding the Attorney General from both the court conferences and the *ex parte* hearings. Such insular *ex parte* hearings had none of the trappings of due process, and, were not confined to grand jury matters, but rather, resembled the actions of a district attorney in an adversarial, as opposed to investigative, role, which requires due process.

To the extent the order under review herein and the process employed authorized the special prosecutor to investigate the source of illegal leaks of grand jury secrecy, as contempt of court, it may be consistent with the general use of special masters to assist the judiciary in fact-finding, and with the order we approved in In re Dauphin Co. However, I am aware of no authority for Judge Carpenter to authorize the special prosecutor to utilize the sitting grand jury for this purpose, to subpoena witnesses independently, to investigate crimes, to determine what charges should be brought, or to prosecute anyone. Such a sweeping grant of prosecutorial authority finds no support in In re Dauphin Co. or any case cited therein. See In re: County Investigating Grand Jury VIII, 2003, 2005 WL 3985351 (Lack.Com.Pl. 2005); Castellani v. Scranton Times, 956 A.2d 937 (Pa. 2008). Moreover, I believe it is likely that Judge Carpenter and Mr. Carluccio's constant collusion as well as the *ex parte* hearings in prosecutorial rather than contempt matters may have violated the Attorney General's due process rights.

While I am obviously troubled by the supervising judge's attempt to broaden the scope of the special prosecutor/master's role in this matter, and I believe that any apparent endorsement by the OAJC of these actions sets a potentially dangerous precedent regarding the appropriate scope of power of future supervising judges, I am in a concurring, rather than a dissenting posture, because of what the special prosecutor ultimately did with this sweeping grant of authority, or, rather, what he did not do. Specifically, notwithstanding the authorization of prosecutorial discretion allowing him to bring charges and prosecute offenders, the special prosecutor did neither of these. Instead, he turned the matter over to the Montgomery County District Attorney, the proper executive authority, to investigate independently crimes other than contempt that were allegedly committed in the course of his investigation and to decide whether to prosecute.[4] Likewise, my concerns with the process do not demand a different result. If charges are ultimately brought against the Attorney General, due process in such proceedings will be required and, thus, any violations through the prior proceedings will be rendered harmless.

I therefore concur that the Attorney General is not entitled to *quo warranto* relief on the narrow issue presented to this court because Judge Carpenter had the authority to appoint a special master to investigate contempt, and, in the end, that was encompassed within Mr. Carluccio's actions.

---

[4] The grand jury presentment found reasonable grounds to believe the Attorney General was involved in the following crimes: perjury, 18 Pa.C.S. §4902; false swearing, 18 Pa.C.S. § 4903; official oppression, 18 Pa.C.S. § 5301; obstructing the administration of law or other governmental function, 18 Pa.C.S. § 5101; and criminal contempt of court. Notably, however, the supervising judge has indicated that because contempt of court is normally handled by the court, it was not specifically referred to the district attorney.