8 A.3d 318

Bruce JOHNSON, Administrator of the
Estate of Thornton Johnson

v.

AMERICAN STANDARD, Amchem Products, Inc., A.W. Chesterton, Inc., Benjamin Foster Co., Brand Insulations, Brown Boveri Corp., Burnham Boiler Corp., Certainteed Corporation, Crane Co., Demming Division, Crane Packing, Crouse–Hinds, Crown Cork & Seal, Inc., Dresser Industries, Inc., Eastern Gunnite Co., Inc., Georgia–Pacific Corporation, Goulds Pumps, Inc., Green Tweed & Company, Inc., Hajoca Plumbing Co., Ingersoll Rand Co., J.H. Refractories Co., Metropolitan Life Insurance, Nosroc Corp., Owens–Illinois, Inc., Pecora Corporation, Riley Stoker Corporation, Union Carbide Corp., Walter B. Gallagher Co., Weil McLain Co., Viacom/Westinghouse Electric Corporation, Bondex International, Inc., Cleaver Brooks

Co., Durabla, Durametallic Corporation, General Electric Company, Goodyear Tire & Rubber Co., Goodyear Canada, Inc., Hercules Chemical Co., Herman Goldner Company, IMO Industries, Inc., ITT Corporation, Melrath Gasket, Inc., Pars Manufacturing Company, Rite Hose & Packing, Inc., Rockbestos Company, McMaster Carr Supply House.

Appeal of Bruce Johnson.

Dorothy Mauger, Executrix of the Estate of
Russell Mauger, and in her own right,

v.

A.W. Chesterton, Inc., Certainteed Corp., Inc., Crane Co., Crane Packing, Crown Cork & Seal Co., Inc., Durabla Manufacturing Co., Foseco, Inc., Garlock, Inc., Georgia–Pacific Corp., Goodyear Tire & Rubber Co., Goodyear Canada, Inc., Goulds Pumps, Inc., Green Tweed & Co., Inc., Hercules Chemical Co., J.H. Refractories Co., Metropolitan Life Insurance, Nosroc Corp., Pecora Corp., Rapid America Corp., Union Carbide Corp., Viacom/Westinghouse Electric Corporation.

Appeal of Dorothy Mauger.

Dolores Stea, Administratrix of the Estate
of Joseph Stea and in her own right,

v.

A.W. Chesterton, Inc., Crane Co., Demming Division, Crown Cork & Seal Co., Inc., Foster Wheeler Corp., Inc., Garlock, Inc., General Electric Co., Goulds Pumps, Inc., Green Tweed & Co., Inc., Melrath Gasket, Inc., Metropolitan Life Insurance, Pecora Corporation, Rapid American Corp., Bevco Industries, Weil McLain Co., Viacom/Westinghouse Electric Corp.

Appeal of Dolores Stea.

Supreme Court of Pennsylvania.

Argued March 9, 2010.

Decided Nov. 18, 2010.

494

496

Steven J. Cooperstein, Brookman, Rosenberg, Brown & Sandler, Philadelphia, for Bruce Johnson, Dorothy Mauger and Dolores Stea.

Mathieu Jode Shapiro, Thomas A. Leonard, Obermayer Rebmann Maxwell & Hippel, L.L.P., Philadelphia, Michael J. Stack, Barry Corrado Grassi & Gibson, PC, for Crown Cork & Seal Co.

Vincent Francis Reilly, Reilly, Janiczek & McDevitt, P.C., Philadelphia, for J.H. France Refractories Co.

Scott Robert Kipnis, Hofheimer Gartlir & Gross, L.L.P., for Rapid American Corp.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

### OPINION

Justice BAER.

We granted allowance of appeal in this case to determine whether individual plaintiffs, who have suffered bodily injury or death due to exposure to asbestos, have standing to raise constitutional challenges under the Commerce and Equal Protection Clauses of the United States Constitution to a state statute, which limits the potential liability in asbestos litigation of certain Pennsylvania corporations. For the reasons that follow, we hold that the plaintiffs herein do have standing to challenge the constitutionality of the statute, and thus reverse the order of the Superior Court, and remand this appeal to that court for further proceedings.

This consolidated appeal arises out of three separate actions brought by the estates of Thornton Johnson, Russell Mauger, and Joseph Stea (collectively, Plaintiffs), against several manufacturers of asbestos, as well as entities which, while never manufacturing asbestos, became successor corporations of former manufacturers. All defendants save one, Crown Cork & Seal, Inc. (Crown Cork), have settled and have been released from the litigation; this appeal centers upon the potential liability of Crown Cork to Plaintiffs.

Crown Cork, a Pennsylvania corporation, has been in existence for over 100 years, dealing primarily in the manufacture of bottle-caps and aluminum cans. In 1963, Crown Cork paid $7 million to purchase a majority of stock in rival bottle-cap manufacturer, Mundet Cork Corporation. Prior to Crown Cork's purchase of Mundet, a small division of Mundet had manufactured products containing asbestos. While the division had ceased manufacturing asbestos products prior to Crown Cork gaining majority control of Mundet, the division still existed at the time of purchase. Ninety days after Crown Cork's acquisition of Mundet, the prior asbestos producing division was sold. Subsequently, and for reasons immaterial

to this appeal, Crown Cork merged Mundet into itself, thus creating a single corporate entity. As a result of the merger, and in accord with Pennsylvania's rules of successor liability of corporations, Crown Cork became named as a defendant in several asbestos cases, and has since spent hundreds of millions of dollars on asbestos-related defenses.[1]

■ On December 17, 2001, the General Assembly enacted Act 101 of 2001, entitled "Limitations on asbestos-related liabilities relating to certain mergers or consolidations." The Act, now codified at 15 Pa.C.S. § 1929.1, generally caps a successor corporation's asbestos-related liability at the fair market value of the succeeded company at the time of the merger or consolidation (here, $7 million). Section 1929.1 provides, in relevant part,

the cumulative successor asbestos-related liabilities of a domestic business corporation that was incorporated in this Commonwealth prior to May 1, 2001, shall be limited to the fair market value of the total assets of the transferor determined as of the time of the merger or consolidation, and such corporation shall have no responsibility for successor asbestos-related liabilities in excess of such limitation.

15 Pa.C.S. § 1929.1(a)(1). At the time the statute was enacted, Crown Cork was embroiled in several asbestos-related cases before the Philadelphia Court of Common Pleas Complex Litigation Center (CLC). Upon passage of Act 101,

1. Generally, Pennsylvania adheres to the rule that "when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." *Continental Ins. Co. v. Schneider, Inc.*, 582 Pa. 591, 873 A.2d 1286, 1291 (2005) (internal quotations marks omitted). As with many jurisdictions across the country, this Court has acknowledged five exceptions to the rule against successor liability where: (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation. *Id.* No one disputes that the second exception, "consolidation or merger," applies to Crown Cork's acquisition of Mundet and its asbestos production division.

which became effective immediately, Crown Cork filed a global summary judgment motion before the supervising judge of the CLC, in an effort to dismiss all pending cases.[2] The supervising judge granted the global motion, finding that Crown Cork had already paid proceeds to asbestos-related plaintiffs in excess of the fair market value of the now-sold Mundet asbestos division; multiple plaintiffs aggrieved by that decision appealed to the Superior Court. Upon application by Crown Cork, this Court invoked its extraordinary jurisdiction pursuant to 42 Pa.C.S. § 726, and ultimately reversed the grant of summary judgment, finding Section 1929.1 unconstitutional as applied, as violative of the remedies clause of Article I, Section 11 of the Pennsylvania Constitution. *Ieropoli v. AC & S Corp.*, 577 Pa. 138, 842 A.2d 919 (2004).[3] Specifically, we held that the statute was unconstitutional as applied to complaints filed before its effective date because the statute extinguished already existing causes of action.

In direct response to *Ieropoli*, the General Assembly immediately enacted a second statute, intended to remedy this fatal flaw. The new act, Act 152 of 2004 and now codified at 42 Pa.C.S. § 5524.1, provided that the limitations on successor liability contained in Section 1929.1, *supra* p. 323, were only applicable to asbestos-related claims for which the two-year statute of limitations began to run after December 17, 2001, the effective date of Section 1929.1.[4] The causes of action

**2.** Under prevailing local rules of the CLC, and consistent with the coordinate jurisdiction rule and Pa. R.C.P. No. 1041.1(f) (providing that, within an asbestos litigation, "A motion for summary judgment filed by one defendant alleging a ground common to one or more other defendants shall be deemed filed on behalf of all such defendants."), an order pertaining to a global summary judgment motion filed before the supervising judge of the CLC is binding upon all cases involving the particular parties, *e.g.*, Crown Cork, within the CLC.

**3.** Article I, Section 11 provides, in relevant part, that "every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

**4.** Section 5524.1 provides, in relevant part,

(a) General rule.—An action to recover damages for injury to a person or for the death of a person caused by exposure to asbestos shall be commenced within two years from the date on which the

related to the cases at bar all had statutes of limitations that began to run after December 17, 2001. Accordingly, and *Ieropoli* notwithstanding, Section 1929.1, is applicable to the instant cases.

At the time of passage of Act 152 of 2004, the actions filed by Plaintiffs Mauger and Stea against Crown Cork (and other corporations) were proceeding before the supervising judge of the CLC. Upon enactment of Act 152, Crown Cork subsequently filed a second global summary judgment motion, averring that the causes of action stated by Plaintiffs Mauger and Stea were barred by Section 1929.1, because of the imposed statutory cap on (Crown Cork's) liability.

██ In response to the global summary judgment motion, Plaintiffs Mauger and Stea did not dispute that Crown Cork had already exceeded the statutory cap on liability. Rather, they averred that Section 1929.1, generally, was unconstitutional under the dormant Commerce and Equal Protection Clauses of the United States Constitution.[5] Specifically, they

> person is informed by a licensed physician that the person has been injured by such exposure or upon the date on which the person knew or in the exercise of reasonable diligence should have known that the person had an injury which was caused by such exposure, whichever date occurs first.
> (b) Applicability.—The limitations set forth in 15 Pa.C.S. § 1929.1(a) and (b) (relating to limitations on asbestos-related liabilities relating to certain mergers or consolidations) shall not apply to an asbestos claim for which the applicable period of limitation commenced on or before December 17, 2001.

**5.** The Commerce Clause of the United States Constitution provides: "The Congress shall have Power to regulate Commerce with foreign Nations and among the several States and with the Indian Tribes." U.S. Const. Art. I, § 8, cl. 3. The dormant Commerce Clause doctrine (sometimes referred to as the negative Commerce Clause) has been inferred from Article I, Section 8, Clause 3, by the courts and is a restriction prohibiting states from enacting legislation, which unduly burdens or discriminates against interstate commerce in favor of intrastate commerce. *See e.g., United Haulers Ass'n, Inc. v. Oneida–Herkimer Solid Waste Mgmt. Auth.,* 550 U.S. 330, 338, 127 S.Ct. 1786, 167 L.Ed.2d 655 (2007). Similarly, the Equal Protection Clause, found in Section 1 of the Fourteenth Amendment to the United States Constitution provides that: "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." Within the context of this case, the Equal Protection Claims

alleged that Section 1929.1 created an unlawful economic protectionism in favor of in-state corporations over similarly situated out-of-state corporations, by limiting in-state successor corporations' asbestos-related liability without affording the same protection to out-of-state corporations doing business in Pennsylvania, thus rendering Section 1929.1 *per se* invalid. *See* Response to Global Summary Judgment Motion at 6 (found in Reproduced Record (R.R.) at 229a) (citing *City of Philadelphia v. New Jersey*, 437 U.S. 617, 623–24, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) ("The opinions of the Court through the years have reflected an alertness to the evils of 'economic isolation' and protectionism, while at the same time recognizing that incidental burdens on interstate commerce may be unavoidable when a State legislates to safeguard the health and safety of its people. Thus, where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected.")). For similar reasons, Plaintiffs Mauger and Stea contended that Section 1929.1 violated the Equal Protection Clause. *See* Response to Global Summary Judgment Motion at 12–13 (found in R.R. at 235a–36a). Crown Cork countered that Plaintiffs Mauger and Stea did not possess standing to aver such claims because they were not out-of-state corporations harmed by the allegedly protectionist, economically-based statute.

As the global motion was pending in the *Mauger* and *Stea* actions, Plaintiff Johnson commenced his own litigation against Crown Cork, which was assigned to a different judge within the CLC. Crown Cork filed for summary judgment in the *Johnson* matter, incorporating its argument from *Mauger* and *Stea*. Plaintiff Johnson subsequently opposed summary judgment, adopting the Mauger and Stea Plaintiffs' response in opposition as his own. Ultimately, the *Mauger* and *Stea* court granted summary judgment in favor of Crown Cork, finding that the "impact of this statute on foreign companies is *de minimus*," such that the prohibitions against protectionism

subsume the idea that out-of-state corporations, similarly situated to in-state corporations in all respects other than situs, are irrationally discriminated against by Section 1929.1.

found in the dormant Commerce and Equal Protection Clauses are not implicated herein. *Mauger v. A.W. Charleston, Inc.*, Tr. Ct. Slip Op. at 12–13 (CP Philadelphia Jun. 25, 2007) (Tereshko, J.); *see also In re: Crown Cork Asbestos Litigation*, Tr. Ct. Order Granting Global Summary Judgment Motion of Crown Cork (CP Philadelphia Jul. 28, 2005) (Tereshko, J.). Moreover, the court determined that Plaintiffs Mauger and Stea could recover from other joint tortfeasors who were "directly culpable" for the injuries sustained by them, thus rendering any effect Section 1929.1 had on their causes of action against Crown Cork insignificant. *Mauger*, Tr. Ct. Slip Op. at 9. Given that the identical issue and arguments were pending in the *Johnson* matter, the court in that case also granted summary judgment to Crown Cork. *See Johnson v. Crown Cork & Seal Co.*, Tr. Ct. Slip Op. at 3–4 (Philadelphia CP Mar. 12, 2007) (Panepinto, J.) (*Johnson I*); *see also* note 2, *supra.*

All three Plaintiffs appealed to the Superior Court, which consolidated the matters. Originally, the case was heard by a three-judge panel of the court. After argument, however, the court *sua sponte* ordered reargument of the case *en banc*. In due course, a 5–4 majority of the court affirmed the respective grants of summary judgment in favor of Crown Cork. *Johnson v. Am. Standard*, 966 A.2d 573 (Pa.Super.2009) (*en banc*) (*Johnson II*). Before addressing the merits of the constitutional challenges, the majority, in an opinion authored by former-Judge Lally–Green, addressed "the threshold question of whether [Plaintiffs] lack standing to raise a dormant Commerce Clause challenge." *Id.* at 577.[6] The Superior Court began its analysis by stating that, generally, "a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge," *id.* (quoting *Soc'y*

6. We note that, while the trial courts below never explicitly granted summary judgment due to Plaintiffs' lack of standing to challenge the constitutionality of Section 1929.1, both Crown Cork and the Superior Court majority characterized Judge Tereshko's ultimate holding in the *Mauger* and *Stea* actions as implicating standing. *See Johnson II*, 966 A.2d at 578.

*Hill Civic Ass'n v. Pa. Gaming Control Bd.,* 593 Pa. 1, 928 A.2d 175, 184 (2007)); a person does not have standing "if [he] has not been harmed by the specific constitutional concern at issue." *Johnson II,* 966 A.2d at 577. To the court, then, such harm is shown if the complainant "falls within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based." *Id.*

With this background in mind, the Superior Court then went on to hold that Plaintiffs lacked standing to raise their constitutional challenges. Specifically, the court found that Plaintiffs were not within the "zone of protected interests" of the dormant Commerce Clause. In other words, according to the Superior Court, the dormant Commerce Clause serves to protect out-of-state corporations, not in-state individuals. Thus, Plaintiffs were essentially the wrong persons to bring the constitutional challenge to Section 1929.1. *Johnson II,* 966 A.2d at 578 (citing *Commonwealth v. Rose,* 960 A.2d 149 (Pa.Super.2008) (holding that a Pennsylvania resident charged with a crime could not challenge the constitutionality of a criminal statute under the Commerce Clause because the defendant, being an in-state resident, was not within the zones of interests implicated, or the class of entities protected, by the Commerce Clause)); *cf. Oxford Assocs. v. Waste System Auth. of E. Montgomery County,* 271 F.3d 140 (3d Cir.2001) (finding that entities not directly affected by a regulation may assert dormant Commerce Clause challenges, but only if they establish they fall within the zone of interests of the Commerce Clause.). Moreover, the court agreed with the trial courts below that Plaintiffs were not affected by any Commerce Clause violation because they could assert causes of action against other manufacturers of asbestos products. *Johnson II,* 966 A.2d at 578–79. For these same reasons, the Superior Court also found that Plaintiffs lacked standing to challenge the constitutionality of Section 1929.1 based upon the Equal Protection Clause. *Id.* at 579.

Judge Klein, joined by three of his colleagues, dissented. In Judge Klein's view, Plaintiffs gained standing to challenge the constitutionality of Section 1929.1 based upon the protec-

tionism given to Pennsylvania corporations coupled with the extinguishment of their rights to recovery because of that protectionism. *Id.* at 582 (Klein, J., dissenting). Moreover, the dissent found perplexing "[a]s a matter of fundamental fairness" that a Pennsylvania citizen, aggrieved by the invocation of a protectionist statute by a corporate defendant, could not challenge the constitutionality of that statute. *Id.*

█ Plaintiffs filed a timely petition for allowance of appeal with this Court, and we granted the petition, limiting our review to deciding "[W]hether [Plaintiffs] have standing to raise constitutional challenges to 15 Pa.C.S. § 1929.1 based upon its alleged violation of the Commerce Clause and Equal Protection Clause." *Johnson v. Am. Standard*, 603 Pa. 146, 982 A.2d 1223 (2009) *(per curiam)*. Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary. *Hunt v. Pa. State Police*, 603 Pa. 156, 983 A.2d 627, 631 (2009).

Plaintiffs begin their argument by observing that this Court has indicated the "core concept [in a standing analysis] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge." Brief of Plaintiffs at 12 (quoting *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 280 (1975)). Here, Plaintiffs assert they have been so aggrieved in that they filed a "garden-variety" personal injury/wrongful death action against a successor corporation of the manufacturer of a defective product; an action in which they clearly have standing, and the defendant corporation invoked the statute as an affirmative and absolute defense to liability in a motion for summary judgment. Plaintiffs, in response to that motion, sought an edict from the trial court declaring the statute unconstitutional, thereby defeating the defense and, concomitantly, Crown Cork's motion for summary judgment. Indeed, Plaintiffs do not dispute that, without a pronouncement that Section 1929.1 is unconstitutional, they possess no right of recovery against Crown Cork.

Plaintiffs then take issue with the Superior Court's assertion that Plaintiffs' lack standing because damages could be recovered from other joint tortfeasors. Plaintiffs contend that this Court has previously rejected such arguments: "A plaintiff does not assert one cause of action against multiple defendants. Rather, a plaintiff asserts one cause of action (or two or several causes of action) against a single defendant." *Ieropoli*, 842 A.2d at 930. In *Ieropoli*, which also involved Crown Cork, we found that "the fact that the causes of action Appellants brought against Crown Cork's co-defendants are proceeding has no bearing on [Section 1929.1's] unconstitutional effect on the accrued causes of action that Appellants brought against [Crown Cork]." *Id.*[7] According to Plaintiffs, the case at bar and *Ieropoli* are indistinguishable: in each case, plaintiffs had causes of action extinguished by application of Section 1929.1, and those plaintiffs all assert, albeit for different reasons, that Section 1929.1 is unconstitutional. Thus, the existence of other potential tortfeasors is immaterial to their claims against Crown Cork.

Finally, Plaintiffs assert that the Superior Court erred by holding that Plaintiffs were required to fall within the zone of interests of the Commerce Clause in order to assert a challenge to Section 1929.1. On this final point, Plaintiffs contend that being required to fall within the zone of interests is only relevant for persons and entities indirectly affected by implementation of a statute. *See Oxford Assocs., supra* p. 326. However, because Section 1929.1 has directly caused Plaintiffs to suffer a real injury, the dismissal of their suits against Crown Cork, they have been directly and adversely affected by the potentially unconstitutional statute.[8] According to

7. As mentioned *supra*, pp. 323–34, *Ieropoli* considered the constitutionality of Section 1929.1 *vis-à-vis* the Remedies Clause of Article I, Section 11 of the Pennsylvania Constitution. Crown Cork was the principal appellee in the *Ieropoli* appeal.

8. Plaintiffs further contend that, while they have been directly affected by Section 1929.1, both this Court and the United States Supreme Court have permitted persons not directly affected by an unconstitutional statute to pursue challenges to such a statute. *See Annenberg v. Commonwealth*, 562 Pa. 570, 757 A.2d 333 (1998) (entertaining a challenge by a taxpayer to a statute that required Pennsylvania resi-

Plaintiffs, the Superior Court wrongly required them not only to be aggrieved by an unconstitutional application of Section 1929.1, but further to satisfy the prudential notion of falling within the zone of interests of the Commerce and Equal Protection Clauses. Under Plaintiffs' theory, such a requirement was in error, because it actually precludes parties aggrieved by a statute from challenging it.

Crown Cork counters that standing is obtained by both (1) satisfying the "case or controversy" requirements of Article III of the United States Constitution;[9] and (2) meeting additional prudential concerns, such as being within the zone of interests of the constitutional provision implicated. Seemingly conceding that Plaintiffs meet the "case or controversy" requirement, Crown Cork acknowledges that Pennsylvania caselaw requires a party to have an "immediate interest" in a case in order to be aggrieved for purposes of standing. However, Crown Cork argues that to have an immediate interest, a party must be within "the zone of interests sought to be protected by the statute or constitutional guarantee in question." Brief of Crown Cork at 13 (quoting *Ken R. v. Arthur Z.*, 546 Pa. 49, 682 A.2d 1267, 1270 (1996)). In other words, Crown Cork advocates that unless Plaintiffs fall within the zone of interests of the constitutional protections raised, they cannot meet the Pennsylvania requirement that a party have an immediate interest in litigation in order to be sufficiently aggrieved to possess standing.

Crown Cork proceeds, noting that the Commerce Clause "was intended primarily to 'limit the power of the States to

dents to pay taxes on holdings in foreign public corporations); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (finding a vendor of alcohol possessed standing to challenge a law banning the sale of alcohol to males under the age of 21, and females under the age of 18, despite the vendor not being a male under the age of 21).

9. We fail to see why Crown Cork invokes Article III of the United States Constitution and its requirement of a "case or controversy." While standing in a federal court is derived from the United States Constitution, the same is not true in Pennsylvania, as the Pennsylvania Constitution contains no reciprocal Article III requirement. Rather, and as will be explained in greater detail *infra*, Pennsylvania courts have consistently required a "substantial, direct, and immediate" interest in the outcome of litigation to obtain standing.

erect barriers against interstate trade,'" while the Equal Protection Clause "was intended primarily 'as the guardian of the right of the similarly situated persons to be treated equally.'" Brief of Crown Cork at 14 (quoting *Dennis v. Higgins*, 498 U.S. 439, 446, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) (Commerce Clause); *Club Italia Soccer & Sports Org. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir.2006) (Equal Protection Clause)). Crown Cork then avers that Plaintiffs do not fall within either of these zones of interest, as they have not been injured by a barrier against interstate trade; nor have they suffered unequal treatment of similarly situated persons.

Crown Cork further advances that, while this Court has already considered a plaintiff's challenge to the constitutionality of Section 1929.1 in *Ieropoli vis-à-vis* the Remedies Clause of Article I, Section 11, such a decision is not dispositive of Plaintiffs' ability to assert a different constitutional challenge in this appeal. According to Crown Cork, two salient facts distinguish *Ieropoli* from the instant appeal. First, this Court did not discuss standing in *Ieropoli*; rather, we merely decided the merits of the constitutional claim brought forward. Second, even had this Court analyzed the standing of the plaintiffs in *Ieropoli*, we would have been constrained to find the *Ieropoli* plaintiffs as being within the zone of interests of the constitutional violation asserted there, *i.e.*, the Remedies Clause of Article I, Section 11 of the Pennsylvania Constitution, because the unconstitutionality of Section 1929.1 violated the plaintiffs' right to open access to the courts under Pennsylvania law.

Plaintiffs filed a reply brief, responding that any prudential or zone of interests concerns raised by Crown Cork are irrelevant, because no one is questioning Plaintiffs' standing in the underlying wrongful death actions that initiated this litigation. Plaintiffs then reiterate that the constitutional challenges to Section 1929.1 only became part of the case *sub judice* upon Crown Cork's invocation of Section 1929.1 as an affirmative defense at the summary judgment stage of the litigation.

Assuming *arguendo,* however, that they must show they fall within some zone of interest, Plaintiffs take issue with Crown Cork's characterization of the purpose of the Commerce Clause. According to Plaintiffs, the Commerce Clause is not engrained within federal constitutional law solely as a protectionist measure benefitting corporate entities. "Rather, it is intended to prevent 'a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole,'" such that it cannot place undue burdens on commerce that crosses its borders. Reply Brief of Plaintiffs at 3 (quoting *Oklahoma Tax Comm. v. Jefferson Lines, Inc.,* 514 U.S. 175, 180, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995)). Thus, according to Plaintiffs, they are seeking to vindicate their own rights, *i.e.* the rights of recovery for the wrongful deaths of their loved ones, which have been trampled unconstitutionally by Section 1929.1.

Finally, Plaintiffs dispute Crown Cork's averments that prudential requirements must be met in every case brought before a court. In support thereof, Plaintiffs quote from *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), for the proposition that

the prudential limitations add to the constitutional minima [of standing] a healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed, the claim [will] not be an abstract, generalized grievance that the courts are neither well equipped nor well advised to adjudicate.

*Id.* at 956 n. 5, 104 S.Ct. 2839. Here, Plaintiffs aver that, through the statute, they are persons who have been directly affected by a hindrance on interstate commerce, thus making the "prudential limitations" irrelevant. To Plaintiffs, zone of interests considerations are of no moment, because they are directly affected representatives of estates of individuals who died from exposure to asbestos, for which Crown Cork, as a successor corporation, is liable absent invocation of the statute. *Accord Oxford Assocs., supra* p. 326. Even if, however, Plaintiffs were required to meet the prudential requirements

of standing, they contend that they have brought a well-struck, specific claim of unconstitutionality with zealous advocacy, thus making Pennsylvania courts "well advised to adjudicate" the dispute. *Munson,* 467 U.S. at 956 n. 5, 104 S.Ct. 2839.

In Pennsylvania, a party seeking judicial resolution of a controversy "must establish as a threshold matter that he has standing to maintain the action." *Fumo v. City of Philadelphia,* 601 Pa. 322, 972 A.2d 487, 496 (2009). Unlike the federal courts, which derive their standing requirements from Article III of the United States Constitution, standing for Pennsylvania litigants has been created judicially. *Id.* at 500 n. 5 "The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution to his challenge." *Id.* (citing *Wm. Penn Parking Garage,* 346 A.2d at 280–81).

> An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation. A party has a substantial interest in the outcome of litigation if his interest surpasses that of all citizens in procuring obedience to the law. The interest is direct if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative.

*Fumo,* 972 A.2d at 496 (internal citations and quotations omitted).

The heart of Crown Cork's contention that Plaintiffs lack standing to challenge Section 1929.1 under the dormant Commerce and Equal Protection Clauses is that a party must be within the zone of interests of the statutory or constitutional protection claimed in order to satisfy the immediacy prong of Pennsylvania's basic criteria that one must have a substantial, direct, and immediate interest to assert standing. The zone of interests portion of an immediacy analysis has its genesis in

federal caselaw applying the Administrative Procedures Act: [10] "The question of standing ... concerns, apart from the 'case' or 'controversy' test [of Article III of the United States Constitution], the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). It first appeared in Pennsylvania jurisprudence five years later in a footnote to the seminal *William Penn Parking Garage* decision:

Generalization about the degree of causal connection required to confer standing is more difficult than generalization about the other requirements [of substantiality and directness] discussed above. However, it is clear that the possibility that an interest will suffice to confer standing grows less as the causal connection grows more remote. It is also clear that standing will be found more readily where protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.' [FN23]

[FN23.] *See Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) (tenant farmers receiving benefits under federal statute have standing to challenge regulations increasing their freedom to assign the benefits in advance on the ground that their increased freedom to assign renders them more vulnerable to exploitation by their landlords because protection of tenant farmers from such exploitation is within the zone of interests protected by the statute); *Association of Data Processing Service Organizations, Inc., v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (plaintiffs in the business of providing data processing services have standing to challenge administrative ruling permitting national banks to furnish such services to their customers because the zone of interests protected by the regulatory scheme arguably includes the interest of non-bank competitors not being

10.  5 U.S.C. §§ 500, *et seq.*

subjected to competition from banks in the provision of non-banking services); *Arnold Tours v. Camp,* 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970) (travel agents have standing to challenge ruling permitting banks to furnish travel services for same reason); *Investment Company Institute v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971) (investment companies have standing to challenge ruling permitting banks to operate investment funds for same reason). The test applied in these cases accords standing where the plaintiff has suffered (or will suffer) 'injury in fact' and the interest he seeks to protect is 'arguably within the zone of interests sought to be protected or regulated by the statute or constitutional guarantee in question.' *See generally* K. Davis, Administrative Law Treatise [§ ] 22.00–1 to –5 (Supp.1970); Stewart, The Reformation of American Administrative Law, 88 Harv.L.Rev. 1667, 1730–42 (1975); Albert, Standing to Challenge Administrative Action: An Inadequate Surrogate for Claims for Relief, 83 Yale L.J. 425, 493–97 (1974).

*Wm. Penn Parking Garage,* 346 A.2d at 283–84 & n. 23 (citations and quotations from main text omitted).

[redacted] Thus, under *William Penn Parking Garage,* we observed that when a party falls within a zone of interests, this fact would permit "standing [to] be found more readily." *Id.* at 284. This analysis, however, does not amount to a requirement that one be in the zone of interests for the immediacy prong of a standing analysis to be satisfied. Four years later, this Court reiterated the notion that the zone of interests analysis could be used as a guideline for finding standing, but not an absolute test:

> In *Wm. Penn, supra* 464 Pa. at 197, 346 A.2d at 283, the requirement that the interest be immediate was explained as involving a concern with "the nature of the causal connection between the action complained of and the injury to the person challenging it." *Necessarily, any examination of this requirement was said to be a question of degree for which only guidelines could be established.* One of the two

guidelines discussed was whether the type of interest asserted was among the policies or interests protected by the legal or constitutional rule relied on by the person claiming standing. *Wm. Penn, supra* at 198, 346 A.2d at 284. Stated another way, i.e., in terms of federal cases, *see* [*Wilt v. Beal,* 26 Pa.Cmwlth. 298, 363 A.2d 876, 882 (1976) ], this guideline determines whether "the interest (the taxpayer) seeks to protect is 'arguably within the zone of interests sought to be protected or regulated by the statute or constitutional guarantee in question.' " *Wm. Penn, supra,* 46 [464] Pa. at 198 n. 23, 346 A.2d at 284 n. 23. *As a test, as opposed to a guideline, this inquiry has been severely criticized. See,* e.g., [K. Davis, Administrative Law Treatise § ] 22.06.

*Application of Biester,* 487 Pa. 438, 409 A.2d 848, 851–52 n. 6 (1979) (emphasis added). Shortly after *Biester,* we expanded on the notion that the zone of interests analysis was merely a guideline used to aid courts in finding immediacy:

Within the requirement that the interest of the plaintiff be "immediate" in order to confer standing, is the concept that the "protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.' " *Wm. Penn Parking Garage* [, 346 A.2d at 284]. The United States Supreme Court has *phrased this guideline* as whether "the interest the plaintiff seeks to protect is arguably within the zone of interests sought to be protected by the statute or constitutional guarantee in question." [*Camp,* 397 U.S. at 153, 90 S.Ct. 827].

*Upper Bucks County Vocational–Technical Sch. Educ. Ass'n v. Upper Bucks County Vocational–Technical Sch. Joint Comm.,* 504 Pa. 418, 474 A.2d 1120, 1122 (1984) (emphasis added).

Despite the commentary of the *Biester* and *Upper Bucks County* Courts explaining that the federal zone of interests query should only be employed as a guideline in considering the immediacy prong of Pennsylvania standing analyses, again, Crown Cork argues that this Court has recently made

the inquiry a requirement: "an immediate interest is shown where the interest the party seeks to protect is within the zone of interests...." Brief of Crown Cork at 13 (quoting *Ken R., supra* p. 327–28); *see also S. Whitehall Twp. Police Serv. v. S. Whitehall Twp.*, 521 Pa. 82, 555 A.2d 793, 795 (1989) ("[A]n 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.").

Indeed, without any citation to the "guideline" language of our previous decisions, the *Ken R.* Court used the zone of interests as the determinative factor in denying standing to a party. In that case, a minor girl, C.R., had been removed from the home of her mother and stepfather after alleging that her stepfather sexually abused her. Upon her removal, C.R. went to live with her biological father, Ken R.; C.R.'s mother, however, denied C.R. the ability to visit and spend time with her half-sisters. Ken R. filed suit on his daughter's behalf, seeking a visitation order allowing C.R. to spend time with her half-sisters. The lower courts determined that C.R. did not have standing to seek visitation with her siblings, and this Court agreed. Specifically, the Court determined that the public policy of visitation, as stated in 23 Pa.C.S. § 5301, is the assurance of reasonable and continued contact between children and their parents and grandparents after a separation and divorce of a marriage. *Ken. R.*, 682 A.2d at 1270. Thus, according to this Court, C.R. as a sibling did not fall within the zone of interests of the statute permitting the bestowment of visitation rights, and thus did not possess an immediate interest to initiate a suit seeking a visitation order. *Id.*

Former Justice Newman dissented because she did not view Section 5301 as being the sole basis of inquiry in the matter. Rather, she would have inquired into the best interests of the minor children involved as to whether a visitation order was appropriate. In so doing, however, Justice Newman also disagreed with the Majority to the extent that it used a zone

of interests analysis as the sole basis for finding that C.R. did not possess an immediate interest and, thus, standing: "the 'immediate interest' inquiry is not, in all cases, limited to the zone of interests protected by statutory or constitutional provisions." *Id.* at 1272 (Newman, J., dissenting). Rather, and harkening back to *William Penn Parking Garage*, Justice Newman reiterated that the immediate interest prong is broader, encompassing legal rules to assist in a determination of whether a party has been aggrieved.

Contrary to *Ken R.*, we have on many occasions not conducted a zone of interests analysis when determining whether a party possesses standing. In *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655 (2005), for example, a case involving the constitutionality of sections of the Gaming Act, we stated that the critical inquiry in a standing analysis revolves around the notion "that the person must be negatively impacted in some real and direct fashion." *Id.* at 660. In that light, one must possess direct and immediate interests such that the "matter complained of caused harm to the party's interest," and that "causal connection is not remote or speculative." *Id.* (internal citations and quotations omitted). Thus, in *Pittsburgh Palisades*, we found that landowners, who had presumably purchased real estate with the intention of building a casino upon that land, but had yet to apply for a casino license, did not possess standing to challenge portions of the Gaming Act because, *inter alia*, they had not demonstrated or offered that the Act "has harmed them or will harm them in any way that is not remote or speculative," and further because "any possible harm to [landowners] is wholly contingent on future events." *Id.* In other words, the causal connection between the harm and legal interests asserted were too remote and speculative. Thus, while finding that the landowners had no immediate interest (or, indeed, any direct or substantial interest) to raise a constitutional challenge to the Gaming Act, this Court did not engage in any analysis concerning whether the claims fell within the zone of interests protected by the Gaming Act or the constitutional protections asserted.

We recognize that our precedent is arguably unclear as to when courts must examine the relevant zone of interests to determine whether a party has met the immediacy prong of aggrievability.[11] Indeed, our research reveals that in some appeals we have apparently decided a case upon a challenger's ability to prove their place within a zone of interests, *see e.g., Ken R.; South Whitehall Township,*[12] while in others, we have simply cited to the maxim that parties must show a substantial, direct, and immediate interest in litigation to have standing to pursue any claims. *See e.g., Pittsburgh Palisades.*

Accordingly, we reiterate what has been stated before: in Pennsylvania, a party must be aggrieved in order to possess standing to pursue litigation. Aggrievability is obtained by having a substantial, direct, and immediate interest in proceedings or litigation. When the standards for substantiality, directness, and immediacy are readily met, the inquiry into aggrievability, and therefore standing, ends. Should, however, a party's immediate interest not be apparent, a zone of interests analysis may (and should) be employed to assist a court in determining whether a party has been sufficiently aggrieved, and therefore has standing. Such a framework is consistent with *William Penn Parking Garage,* where we found that "standing will be found more readily where protec-

11. Leading treatises on Pennsylvania jurisprudence further reflect the potential confusion in this area of the law. For example, Standard Pennsylvania Practice notes the *William Penn Parking Garage* and *Biester* concept that, as a "guideline," "standing will be found more readily where protection of the type of interest asserted is among the policies underlying the legal rule relied upon...." Std. Pa. Prac.2d § 14:23 (citing *William Penn Parking Garage* ). However, this treatise then cites to the *South Whitehall Township* language, that suggests the immediacy prong is found "where the interest that the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question." *Id.* (citing *S. Whitehall Twp.* ).

12. *South Whitehall Township,* in fact, has only been cited four times by this Court in discussing the zone of interests analysis as a potential "test" for standing. *See Hosp. & Healthsystem Ass'n of Pa. v. Dep't of Pub. Welfare,* 585 Pa. 106, 888 A.2d 601 (2005); *Hydropress Envtl. Servs., Inc., v. Twp. of Upper Mount Bethel,* 575 Pa. 479, 836 A.2d 912 (2003); *Ken R., supra* p. 327–28; *Chester County Children & Youth Servs. v. Cunningham,* 540 Pa. 258, 656 A.2d 1346 (1995).

tion of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.' " *Wm. Penn Parking Garage*, 346 A.2d at 283.

We stress, however, that such a consideration is merely a guideline that may be used to find immediacy, and not as an absolute test, as the Superior Court used below. To be sure, in the federal courts, which employ prudential considerations such as zone of interests regularly, such limits are only used "to ensure that only those parties who can best pursue a particular claim will gain access to the courts." *Oxford Assocs.*, 271 F.3d at 145. More specifically, in the context of Commerce Clause challenges, the zone of interests inquiry is only relevant for entities not directly affected by a regulation or statute. *See generally id.* Using, then, zone of interests as a guideline for finding an immediate interest only when that conclusion is not ordinarily apparent, will further the essential goal of ensuring that proper parties bring specific claims into court.

With the legal framework in which we shall decide this appeal set, we now apply it to the facts at hand. In our view, Plaintiffs possess standing to pursue their constitutional challenges without the need for analyzing any relevant zone of interests. First, this consolidated appeal began as tort claims sounding in strict products liability and wrongful death. Only upon Crown Cork invoking the protections of Section 1929.1 did Plaintiffs attempt to challenge the validity of Section 1929.1 under federal constitutional law. Thus, Plaintiffs had already gained access to the courts and there was no challenge to their standing to bring the lawsuits. *Accord Oxford Assocs.*

Moreover, as Plaintiffs' cases were ultimately dismissed under Section 1929.1, it is hard to imagine a more "direct, substantial, and immediate" interest in a constitutional challenge than that presented instantly. First, they are "substantial" because their interest in having Section 1929.1 declared unconstitutional clearly surpasses the ordinary citizen of Pennsylvania, as their lawsuits are subject to dismissal under Section 1929.1. Second, there is a direct connection between

the constitutional violations asserted and the harm complained of, as Crown Cork is invoking the protections of a potentially unconstitutional statute to obtain automatic and irreversible dismissal of Plaintiffs' causes of action. Finally, Plaintiffs' interests are immediate, because only Crown Cork's invocation of Section 1929.1 causes the dismissal of Plaintiffs' claims; the causal connection between Plaintiffs' claims and the harms asserted are not remote or speculative.

Further, the constitutional challenges presented by Plaintiffs are "real and concrete, rather than abstract," and, in light of their entire cases being dismissed under the protections of Section 1929.1, we can discern of no other party more readily equipped than Plaintiffs to advocate the constitutional claims forwarded below. *See City of Philadelphia,* 838 A.2d at 569 ("The requirement of standing under Pennsylvania law is prudential in nature, and stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract."); *Biester,* 409 A.2d at 852 (finding that, in a standing inquiry, "[C]onsideration must be given to other factors such as, for example, the appropriateness of judicial relief, the availability of redress through other channels, or the existence of other persons better situated to assert the claim.") (quoting *Camacho v. Bird,* 398 F.2d 314 (9th Cir.1968)). In light, then, of Plaintiffs readily and clearly meeting all three prongs, they have been aggrieved by Crown Cork's invocation of Section 1929.1, and thus possess standing to raise the applicable constitutional challenges before a trial court.[13]

▆▆▆ Finally, to the extent the courts below found Plaintiffs lacked standing to raise the constitutional claims herein based upon their ability to recover against other defendants through

13. Further, had we been constrained to analyze Plaintiffs' claims using zone of interests, it appears that they would have been permitted to proceed beyond summary judgment. *See General Motors Corp. v. Tracy,* 519 U.S. 278, 286, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) (holding that a challenge to a state statute under the dormant Commerce and Equal Protection Clauses could proceed, recognizing that a "cognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates, and customers of that class may also be injured.")

settlements and separate litigation, we reject such analyses. These same arguments were made and rejected in *Ieropoli* and, while *Ieropoli* concerned different constitutional matters than those raised instantly, the same concept applies to the instant appeals.

> A plaintiff does not assert one cause of action against multiple defendants. Rather, a plaintiff asserts one cause of action (or two or several causes of action) against a single defendant. While a plaintiff may, under the appropriate circumstances, join the cause of action he has against one defendant with the cause of action he has against another defendant in one lawsuit, the cause of action he asserts against each defendant remains distinct. Thus, the fact that the causes of action [the *Ieropoli*] Appellants brought against Crown Cork's co-defendants are proceeding has no bearing on the Statute's unconstitutional effect on the accrued causes of action that Appellants brought against it.

*Ieropoli,* 842 A.2d at 930 (internal citations omitted).

In conclusion, we hold that Plaintiffs possess standing to challenge the constitutionality of Section 1929.1 under the dormant Commerce and Equal Protection Clauses through their opposition to Crown Cork's global summary judgment motion. Their access to the courts for their general redresses is not disputed, and they have a direct, substantial, and immediate interest in challenging the validity of Section 1929.1. Thus, the invocation of Section 1929.1 by Crown Cork has aggrieved them, such that standing is present. Moreover, the ability of Plaintiffs to recover from other manufacturers is of no concern within the instant analysis. We thus reverse the order of the Superior Court, which had affirmed the trial courts' grants of summary judgment. In light, however, of the Superior Court dismissing Plaintiffs' claims on standing grounds alone, without discussing the merits of the constitutional challenges themselves, we further remand this appeal back to the Superior Court for full consideration of the merits of Plaintiffs' constitutional claims.

Jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices EAKIN, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring and dissenting opinion.

Justice SAYLOR, concurring and dissenting.

In many past decisions, I have taken a broader view of standing than the majority of other Justices. *See, e.g., Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 209–11, 888 A.2d 655, 663–64 (2005) (Saylor, J., dissenting). Here, I support the majority's judgment that a zone-of-interest test should not be the sole determinant of "immediacy" as that factor is used in standing analysis in Pennsylvania.

Although I have no difficulty with the conclusion that Appellants have a direct, immediate, and substantial interest in the outcome of the litigation, I would note that such factors predominantly serve as the litmus applicable to standing to commence litigation (most frequently in controversy where a plaintiff seeks some sort of declaration of his or her rights and interests). With respect to those already enmeshed in an action where their rights and interests are unquestionably in issue, their standing to assert particular questions—here, a facial constitutional challenge to a presumptively valid statute—generally has been treated as a more refined inquiry.

In this regard, facial constitutional challenges typically are disfavored by courts. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, 128 S.Ct. 1184, 1191, 170 L.Ed.2d 151 (2008); *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir.2010); *accord National Automobile Service, Inc. v. Barfod*, 288 Pa. 227, 229, 135 A. 630, 630–31 (1927) (explaining that, to support a challenge to a statute under which a court has acted, " 'it must plainly appear from the facts presented by the record, . . . that the complainant is one who has been directly affected by what he claims to be the unconstitutional part or feature of the statute in question' "). As to such contests to duly enacted pronouncements by the legislative branch of government, judicial restraint is implicat-

ed, and special rules of standing pertain. *See, e.g., Dickerson,* 604 F.3d at 741–42.

Since this particular line of analysis is not set out in the submissions to this Court, I do not consider it further here. I note only that I would not obviate its development in the intermediate or common pleas courts, to the extent it may remain available for consideration by those tribunals.

Thus, I reference the limitations on facial challenges here primarily because, without their consideration, I am unable to support the majority's broader pronouncements concerning Appellants' standing to invoke the dormant Commerce and Equal Protection Clauses to challenge the facial validity of Section 1929.1. I also find the principles helpful to a better grasp of standing jurisprudence as applied to those whose individual interests are unquestionably at stake in an existing civil action.